Judge Green
delivered the opinion of the Court.*
James Cole, in 1799, made his'will, by which he gave several specific legacies to his three sisters, Christian Cole, Esther Cole, and Mary Cole, and to his daughter, Betsey Cole, tip gave his manor plantation, and lands of all kinds, and four slaves, males and females, and the increase of the females, “to her, and her heirs and assigns, forever.” He then directed all the residue of his property to be sold, and after the payment of his debts, he gave all the balance of the money arising from the sales, to his daughter Betsey, her heirs and assigns. He devised, that the surplus money should remain in his executor’s hands, and not be put to interest, until his daughter came to lawful age to receive it: and then proceeds: “Item. It is *548 my will and desire, that if my aforesaid daughter, Betsey Cole, shall die without lawful heir or issue of her own body, that then, all the lands, and all the other estate, I have herein given to my said daughter Betsey, that shall b,e left remaining at her death, be equally divided to and between my aforesaid three sisters, namely, Christian Cole, Mary Cole, and Esther Cole, to them, and their heirs and assigns, forever.” Betsey Cole died without issue, never having been married; and the slaves bequeathed to her, and the increase of the females of them, were divided among the three sisters of the testator, before there was any administration on her estate. The appellee after-wards took administration on her estate, and brought an action of detinue against the appellant, for the recovery of one of the said slaves, purchased by Ihe defendant from John Mahan, the. husband of Esther, the testator’s sister; and recovered a judgment for the slave, from which judgment this appeal is taken.
The question is, whether the limitation over to the testator’s sisters is good, as an executory devise?
It is clear, and admitted, that such a limitation, after a general failure of the issue of the first taker, is void, and can only be made good by some expression or provision of the will, or some circumstance shewing that the intention of the testator was to give the property over, only in the event of the first taker dying without issue living at the time of her death. In respect to such limitations of personal property, the Courts have been always anxious, and even astute, to find expressions in the will, or circumstances ¡n the case, to have that effect; for otherwise, the intention of the testator, towards those who" are intended to be substituted to the first taker, would be unavailing. This anxiety, however, ought not to induce us to resort to any forced construction of the will. If, upon a fair construction of the instrument, it is found that the testator, in reality, designed that the substitution should take place, whether the event, upon which the limitation was to take effect, *549 happened within the period allowed for executory devises, or afterwards, that intent being contrary to law, the Court cannot afford any relief, upon the supposition, that if the testator had known the law, he would have limited the contingency to the allowed period.
In'this case, the property being given to the daughter absolutely, and in the strongest terms, and to the sisters and their heirs and assigns, if the daughter should die without lawful heir or issue of her own body, there is nothing to restrain the generality of the expressions to a dying without issue living at the death of the daughter, or in the life-time of the sisters, or any of them, unless the expression, “ that shall be left- remaining at her death,” can have that effect. What did the testator mean by these words? Did he mean that all the property given to his daughter, which did not perish in her life-time, should immediately upon her death, go over, if she had no issue then living? Or, did he mean that all the property which she had not previously disposed of, should go over upon the failure of her issue, whenever that event might happen? The first is the construction insisted on by the appellant; the latter, I think, is the true construction. The property given to the daughter, was land, slaves, and money. The expression, “that shall be left,” &c. applies to all the property. The land and money must be left at her death, unless disposed of and alienated during her life. As to these, the expression used, can only refer to that part not disposed of by her. The slaves might have perished; but it would have been perfectly idle to except such as had perished, from the operation of the devise over. That which does not exist, cannot pass. The testator had given to his daughter, and her heirs and assigns, forever, an absolute estafe, and intended, not to restrain the unlimited power of alienation, incident to that estate, but to control the future disposition of so much of the property, as she might not dispose of in her life-time; and that it should go to her issue, if she had any, as long as they existed, and *550 upon the failure of issue, to his sisters or their representat¡ves>
If, however, the conclusion last stated is not correct, and the testator intended to give over the property left, only in the event of his daughter’s dying without issue living at the time of her death, it is clear, that he intended to give to his daughter an absolute power of alienation; and in that case, could not control the property not disposed of by her, as such control would be inconsistent with the nature of the estate given to her, and the limitation void, for uncertainty as to what property was to go over.
The case of Guy v. Montague, decided by Lord Chancellor Northington, in 1764, and his decree affirmed in Parliament, in 1770, 3 Bro. Parl. Cas. 314, is in point. In that case, Elizabeth Rogers having a power to dispose of 3000/. by her will, and having an Only son her heir at law, and whom she appointed her executor, devised as follow's: “I do hereby appoint and order, that upon the death of my said son without issue, or in case my said son does not dispose (of the said sum of 3000/.) either by deed or will, which shall first happen, that the sum of 500/., part thereof, be paid to my nephew, J. C. for his own use, and 500/. to A. G. for her own use, and 900/. to A. C. to her own use, and to E. P. 300/., to her own use, and E. P. 100/.; to four Churches, 100/. each; 50/. to the parish of N.; to the poor of E. 100/.; and the remaining 150/. among my son’s servants, according to their deserts.” The son died without issue living at his death, and made no disposition of the 3000/. by deed or will. The legatees over filed their bill against the son’s representatives, claiming the 3000/. under the limitation, as a valid executory devise; and the bill was dismissed.
This case was much stronger in favor of the claimants under the limitation over, than the case at bar. The fact whether the son disposed of the fund by deed or will, was necessarily to be ascertained at the time of his death. The limitations over, were to sundry persons, without any *551 words of inheritance, and for their own use; and a part was limited to the son’s deserving servants. But all these circumstances, which tended to shew an intent to give over the property upon the death of the son without issue then living, or in the life-time of those to whom it was limited, could not prevail against an estate in him, to go over only on a general failure of issue, coupled with an absolute power of disposition. If he had had no estate, and only a naked power of disposition, it might have been otherwise.
There are other cases to shew that after an absolute property given to one, with an unlimited power to dispose of it, express or implied, a disposition by the donor of so much of the property as may not be disposed of by the donee or legatee to another, is void, because of the inconsistency, and the uncertainty as to what part of the property is intended to go over.
In Pushman v. Filliter, 3 Ves. 7, the bequest was, “ Lastly, all my household goods and furniture, plate, linen and china, ready money and securities for money, stock in trade, together with the residue and remainder of my personal estate, I give, &e. to my wife Mary Push-man, desiring her to provide for my daughter Ann out of the same, as long as she my said*vife shall live; and at her decease to dispose of what shall be left among my children, in such manner as she shall judge proper.” 'The children claimed after the wife’s death the property so devised to her against her executor. The Master of the Rolls dismissed the bill, upon the ground that it was an absolute gift to the wife of the whole property? to any use she might think fit; so that she might have made a valid disposition in her life-time, of all, leaving nothing to pass by the devise over; and no valid limitation could be made after such an absolute power to dispose, coupled with an interest. This I take to be the effect of that case.
Again, in Bull v. Kingston, 1 Meriv. 314, the effect of a confused will is stated by the Master of the Rolls, to be this: “I give to Charlotte Williams, the residue of *552 my estate, together with the right of disposing of the same by will, except to E. P.; and if she dies without a will, then I give whatever may remain at her death, to WilHam Ashby.” The Master of the Rolls proceeds: “This makes the whole intelligible and consistent. She, the testatrix, gives to Charlotte Williams, as a married woman, the right of disposing by will, of the property vested in her, independently of the control of her husband, and she intended, at the same time, that if any thing was left undisposed of by her, it should go to William Ashby. But this is an intention which must fail, on account of its uncertainty. Charlotte, therefore, took the absolute interest in the property, which, as to all the parts which were not specifically disposed of by her will, passed to her husband, and from him to the present plaintiff, his personal representative.” The contest was between the husband’s personal representative and William, Ashby, as to a part of the property not disposed of by the will of Charlotte Williams. ■
Other cases to the same effect are to be found. The Attorney General v. Hall, 8 Vin. Abr. 103, pl. 50; where the devise of real and personal estate was, in effect, to A. and the heirs of his body^ and if he should die leaving no heirs .of bis body living, then so much of my real and personal estate as my said son shall be possessed of at his death, to the Goldsmith’s Company. Here the limitation as to the personal property was expressly to take effect within the term allowed by law for executory devises. But it was held to be void, on account of the power to the first taker to dispose of the whole, so as to leave nothing to go over certainly, if the cohtemplated event happened. This case is cited and approved by Lord Hardwicke, in Flanders v. Clarke, 1 Ves. 9; which case was decided on the same principles.
The same doctrine is asserted in the .case of Miller v. Moor, 8 Vin. Abr. 248, pl. 21; where a devise-was to three daughters and their heii'S and assigns for ever; and if. *553 they should happen to die, and leave no issue of their bodies to inherit such estate, or not be of age, or make no other disposal thereof then to S. B. and his heirs andassigns, forever. This was held to give a fee simple to the daughters. This' would have been a fee tail in the daughters, but for the expression, “or make no other disposal thereof. ”
The judgment should be affirmed.

 The Phesibekt and Judge Cabee&, absent.