CARR, J.
Upon these appeals from interlocutory decrees, so much of the cause only is before the court as the chancellor has acted upon: this, I think, has been the constant course of the court. The chancellor, then, has decided, in the first place, that Nancy Madden had no title to or right in the slave Lucinda, but as a legatee of her father and assignee of other legatees ; that Mrs. Madden the testator’s widow, took, under his will, not an absolute prop *366 erty in the slaves included in the moveable property thereby bequeathed, but only a life estate. The inquiry is as to the meaning of the bequest: it is a pure question of intention. There are no technical words •or forms of expression used in the will. It is, evidently, the production of a plain man, who, though he understood very well what he meant to say, and was able to express himself quite intelligibly, knew nothing of legal forms or legal phrases. To ascertain his meaning, 'we must not look to treatises on wills, or to adjudged cases, but simply to the words he has used. There were but two slaves included in this bequest of the moveable property, one a man of trivial value, the other a female (the mother of - Lucinda) who died shortly after. the testator. If Lucinda was the property of Mrs. Madden, it is because her mother was given to her byr the will. “I desire the moveable property of every description, after the death of my wife, shall be sold, and the money divided among my five daughters.” This sentence it is impossible to misunderstand, or to have *a doubt about: it expresses the clear will of the testator on two points, 1. that all his personal estate was to be sold for the benefit of his daughters, and 2. that this sale was to take place after the death of his wife. This (as lawyers know) would have given his wife a life estate in the personal property, by implication; but the testator probably had no idea, that a direction to sell after his wife’s death, would imply an estate for life to her; and if he did know it, he chose not to rest it on implication, but to give it to her expressly. He therefore adds, “after all my just debts are paid, my desire is, that all my moveable property, shall be at the intire disposal of my wife.” Now, is there any thing in this provision, incompatible with the first? If the testator had stopped here, does not every one see his meaning at a glance? At my wife’s death this property shall be sold ; but till then, she shall have the intire disposal of it. Is there any thing in these words “intire disposal” which, of necessity, and in the teeth of the preceding sentence, vests the absolute property in the wife? They are not technical words, to which a fixed meaning is attached, and that so well known, that we must suppose the testator so used them. They are such words as may well be explained, and their operation either enlarged or restricted, by the context. Thus, the direction being given to sell the property at the wife’s death, the intire disposition given her, means the free use and enjoyment, the uncontroled possession and ownership, until her death, but such a possession, ownership and disposal, as may leave the property to be sold at her death. This, I say, would seem to me the plain construction, if the testator had stopped at the sentence giving his wife the intire disposal: but he immediately adds, “On her decease, the same to be disposed of as above mentioned;” thus repeating his favorite wish of a sale and division among his daughters, and making, as he no doubt thought, “assurance doubly sure.” Small indeed, would seem to be the worth of language, or the security of wills, if an idea thus clearly expressed, thus solicitously recurred to, and anxiously inculcated, can be ^explained away. It is impossible to suppose, that the testator meant by the gift to the wife, to defeat and destroy the sale directed at her death; and yet he must so have meant, if he meant to give her the intire and absolute interest in the property. Indeed, it is not, I believe, contended that the testator meant to vest in his wife the absolute property, but that he intended to give her a life estate, with an absolute power of disposition, leaving only so much to be sold at her death, as should be undisposed of by her, and that, by consequence, this power of disposal vested in her the absolute interest in the' whole, whether disposed of or not, and rendered the direction to sell at her death void, not by force of the testator’s intention, but by operation of law. This argument concedes, 1. that the testator intended to give his wife only a life estate; and 2. that he intended a sale of the property left at her death. But, it is said, he meant to give her an absolute power of disposal of the property, and this converts the estate for life into an absolute estate, and destroys the intention to give it for life, and the direction to sell after her death. Thus, while we are looking for intention alone, we suffer one doubtful phrase, “intire disposal,” a phrase having nothing technical, no settled meaning, but liable to be enlarged or restricted bj' the context, to overrule and destroy the settled wish and will of the testator, twice expressed in words as clear as light, viz. that his moveable property of every description should be sold at the death of his wife, and the monejr divided among his daughters. To such a construction I can never assent. I am clearly of opinion, that.the testator meant to give his wife, and has given her, a life estate in the moveable property, with a power of disposal commensurate with that estate; and at her death the property to be sold, and the money divided among his daughters. I agree, therefore, with the chancellor, that the testator’s widow Mrs. Madden, had only a life estate in the slaves in question, and could give no more by her deed to the appellant. His other positions, that an executor cannot make a valid gift of his testator’s property, and that the appellant can have no claim *to remuneration for her trouble and expense in rearing this slave, against her co-legatees in remainder, seem to me indisputably correct; indeed, they have hardly been contested. And these are the only principles declared, the only points of law decided, by the decree.
GREEN, J.
The provisions of the will of Mabra Madden the elder, directing that his moveable property of every description, after the death of his wife, should be sold, and the proceeds divided between his daughters, and that, after the payment of his debts, all his moveable property should be at the intire disposal of his wife, and on her decease the same should be disposed of as before mentioned, are so inconsistent, that they would, if taken literally, utterly destroy each other. Such a construction ought not to be admitted, if by anj’- other, *367 consistent with the probable intention of the testator, the provisions can be considered as each modifying the other, without destroying their whole effect.
The judgment of the court below upon this will, was 1. that it gave only a life estate to the widow: 2. that such a gift with a power of disposition of articles, such as grain, the use of which consists in its consumption, is absolute, and a limitation over ineffectual: 3. that although money may not, generally, fall within this principle, yet the strong language of this will, that after the debts were paid, all the testator’s moveable property should be at the intire disposal of his wife, excluded the notion of her accountability for money, or for any articles except such as are susceptible of being used and returned in kind. And, upon these principles, the court thought, that neither the widow nor the executors of Habra Madden were accountable to his daughters, for money received on account of outstanding debts due to the testator, or for the sales of crops on hand or growing at the time of his death. I infer also, from an expression in the decree, “since the testator expressly requires all the property remaining at the death of his wife, to be sold and the proceeds divided amongst his five daughters,” *that the court was of opinion, that the power of disposition given to the wife bad the effect of restraining the testator’s disposition in favor of his daughters, to such of the property only as remained at his wife’s death undisposed of by her. And this, I am perfectly convinced, was the real intention of the testator.
The first sentence of his will, on this subject, by directing, that his moveable property of every description, should after the death of his wife be sold, gave her a life estate by implication in the whole: the second modified it, by subjecting the whole to her intire disposition, not with the intention óf revoking the former in toto, but only so far as the widow should exercise that power of disposition: and the last was a mere repetition of the first, and modified alike by the second. This construction attributes to the testator a reasonable intention, and one not at all uncommon, to give to a favorite legatee the use of a fund for life, with a power to dispose of as much of it as might be necessary to the occasions of such legatee, to be judged of by the legatee, and with a desire, that so much of it as was not disposed of by the first taker, should go to the persons next in his affections; particularly, when the last are in the same relation to the first taker as to the testator, and likely to be as much in the affections of the first taker as his own. This construction too would leave every clause of the will to have some effect. If, on the contrary it is supposed, that the testator intended a power of disposition given to his wife, only co-extensive with the interest for life previously given, it would render that provision utterly nugatory ; for the legatee would have had such a power of disposition as a' necessary incident to her interest for life. And if such a construction could be put upon a power given in general terms, it is impossible to apply it to one given in such broad emphatic terms as “the intire disposal:” a power of disposition for life, is not a power of intire disposition. It would be still more extravagant to suppose, that the testator, when he gave the same power, in the same terms, as to all his '^personal property, intended, and had in his mind, that it should operate as to some articles, (such as would necessarily be consumed in use, money, debts and the proceeds of crops made for sale and sold) and give his wife an absolute right of property in them, and as to others (such as could be used and returned in specie) only a power of disposition of her interest for life. Whether such is or is not the legal effect of such a power, connected with a life estate, is another question, which will be attended to; but, surely, such an effect could not have been the intention of the testator.
If the court below, as I have supposed, entertained the same opinion which I have expressed as to the construction of the will, that the testator intended to give only a life estate in his personal property to his wife, with a power of absolute disposition over all or any pari of it at her pleasure, and that only such part as was not so disposed of should be sold at her death, and disposed of according to his will, then it was wholly unnecessary to go any further, than to inquire whether such a disposition could be legally carried into effect? If it could, then the will of the testator controlled the disposition of the whole alike, without any discrimination. If it could not, because the limitation over in such a case would be void, as being contrary to settled rules of law, the limitation would be wholly frustrated, and the first taker, by virtue of such an absolute power of disposition, would have the absolute property in all, and not a part only of a peculiar description. And this is the settled law (wherever there is an interest given coupled with an absolute power of disposition) in respect to all property of every description, real and personal, as was decided in Riddick v. Cohoon, 4 Rand. 547, upon many authorities there collected. That case and those there cited, are all cases of gifts, indefinite, or expressly in fee; and it may be supposed, that the rule applies only to such cases, and not to those which are limited to an estate for life, either expressly or by implication, especially, as it was said by the master of the *rolls in Bradley v. Westcott, 13 Ves. 452, that there was an established distinction between a case of a gift for life with a power of disposition added, and a gift to one indefinitely with a superadded power to dispose by deed or will. I am satisfied there is no such distinction, except so far as the character of the estate first given, may, in doubtful cases, influence the construction of the will, as to the extent of the power given ; but when the will expressly gives a power of absolute disposition, the effect is the same in both cases. Thus, in Goodtitle v. Otway, 2 Wills. 6, a devise to one for life, and after death to her issue, but if none that she should have power to dis *368 pose of the lands at her will and pleasure, it was held, that she had an estate tail with a fee simple upon contingency, and not a mere power to dispose or appoint. And Beachcroft v. Broome, 4 T. R. 441, is to the same effect. It may be said, that there was in those cases, no limitation over upon the failure of the tenant for life to dispose of the subject, and that circumstance makes a difference: but it does not. In Barford v. Street, 16 Ves. 135, the devise was of real and personal estate, in trust to pay the rents, dividends &c. to a married woman for life, and after her death, to convey &c. according to her appointment, with a limitation over in case of her death without making an appointment: the master of the rolls held, that she had an absolute property immediately, and decreed the trustees to convey it absolutely to her in her life time. So, in Irwin v. Farrar, in the Exchequer, 19 Ves. 86, a sum of money was given to trustees to be invested in government securities, the dividends thereof to be paid to a niece of the testatrix for life, and after her decease, to such person or persons, or for such use or uses as she should appoint by will or otherwise, and impowering her to apply the fund, if she chose, to the purchase of an annuity, so that it was purchased and secured, with the approbation of the trustees, and that she should not have power to sell such annuity : it was held, that the legatee had an absolute power of disposition over the whole fund, and decreed, that the trustees should pay over the legacy *to her for her own use, and to be at her own disposal. In the case above stated of Barford v. Street, the estate was limited in express terms, to the life of the first taker; it was vested in trustees; and there was a limitation over, in case she should fail to dispose of it by appointment: and in Irwin v. Farrar, the first taker had no power to dispose of it, according to the literal terms of the will, but by some act to take effect after her death. In our case, there is no limited estate in terms; no trustees are interposed; and the power is immediate and unlimited as to manner, object and subject. The observation of the master of the rolls, in Bradley v. Westcott, in respect to a settled distinction in such cases, between an indefinite interest, and an express life estate, given in the first instance, was made in reference to the effect of that circumstance, in determining the extent of the power. There, the testator gave all his personal property to his wife for life, to be at her full, free and absolute disposal and disposition, during her natural life, without being in any wise liable to be called to any account of or concerning the amount, value of particulars thereof, by any person or persons whatever,” and from and after her decease, he gave a certain specified part thereof, to such persons as his wife by her will duly executed should direct and appoint, and if she should make no such appointment, that part was to fall into the residue, which should remain undisposed of by his wife at the time of her decease; and all the rest, residue and remainder of his said personal estate, which should remain undisposed of by his wife at the time of her decease, he gave to a residuary legatee. The master of the rolls held, that the express estate for life, and power of disposition, for her natural life only, given in the first instance to the wife, were not enlarged by the subsequent declaration exempting her from account &c. nor by the subsequent disposition of the property remaining un-disposed of by the wife at her decease; because that would allow an implication from equivocal terms to control an express limitation of the estate and of the power of disposition, to her life only; and, especially, because a power of *appointment in absolute property by her will, was given to the wife, as to a specified part of the property, which contradicted the idea of a general power over the whole: and that the exemption from accountability &c. was also only intended to-protect her from any trouble, in that way, during her life only. He admitted, that it was necessary to construe this to be either a mere interest for life (with the greatest power of disposition, which one having such an interest could enjoy) or to be property in the widow: that there was no medium : for he could not say, that she had a life interest, with a power to dispose of the whole, if she thought fit, but that the will shall operate upon what she should leave undisposed of. Upon that construction it would be property, as it would be absolutely uncertain what would be the subject of the residuary bequest. And, consequently, he held that she had only a life estate, even in that over which she had a power of appointment by will; and that her will giving in general terms all her property did not pass it to her legatee. In our case, we have no express estate for life, no express limitation of the power of disposition to the continuance of the life estate, and no particular power to dispose of a specified part of the property, to control, not an implied power to dispose of all, (as in that case) but an express power to that effect, in our case.
If it was the opinion of the chancellor, that the testator intended only to give a power of disposition co-extensive with the interest of the donee for life, and that, in such a case, the law controlled the intention of the testator, in respect to such articles as could be only used by consuming them, because incapable of limitation, and gave the absolute property of such to the donee; and that the existence of the power, though nugatory to all other purposes, would have the effect of enlarging the scope of that rule of law, so as to embrace other articles not necessarily consumed in use, such as money, debts collected, and the proceeds of crops sold: I cannot assent to either of these propositions. As to the last, the intent of the testator was, avowedly, the *same as to his whole moveable property of every description; and if his intention was invalid as to a part, because contrary to a rule of law, and valid as to the rest, it would be -because the law itself marks the line of discriminátion contrary to the testator’s will; and it would be extravagant to say, that the intention of the testator could operate either way, *369 beyond the legal line of discrimination. If it coaid affect any thing beyond that line, it must of necessity affect all alike. As to the first proposition, I do not think that the doctrine is true, that an interest given for life in things quae ipso usu consumuntur, confers, by operation of law, an absolute property, with or without a power of disposition, which, if connected with such an interest, must operate by its own force, and alike upon all descriptions of property given for life, either extending the life estate to an absolute property in all or none. The master of the rolls, in Randall v. Russell, 3 Meriv. 194, did indeed assert, that a specific bequest of such articles for life (without any express power of disposition) did vest an absolute property in the first taker, but admitted, that in case of a residuary bequest it did not, and that in such a case the limitation over would be valid. In the present case, the bequest was residuary, or of the same nature, being of things of all descriptions in mass, which is the only ground of discrimination between a specific and residuary bequest. It is therefore unnecessary, in this case, to examine the general question at large: but I must be permitted to say, that my opinion, made up on great consideration and given judiciallj' in an important case, with this opinion of the master of the rolls before me, was, and is, that even in thp case of a specific bequest of such articles for life with a limitation over, the limitation is good; that the intention of the testator, being in such case most obvious, that the legatee in remainder shall have the benefit of the subject after the death of the first taker, it ought to be carried into effect, if possible. And it may be effectuated by requiring the representative of the first taker, to deliver articles of the same kind and quality, or to pay their *value to the remainderman. This is clearly the civil law, from which the principle of the common law now prevailing was taken, and is intirely just, and no way inconvenient in its execution.
If T am right in supposing, that the intention of the testator was to give a life estate in the whole of his personal property of every description to his wife, with an absolute power of disposition as to all, and that so much thereof as might be left undisposed of by her at her death, should be sold &c. then an absolute property in the whole was vested in her, whether disposed of by her or not, and the limitation over was void, not by force of the testator’s intention, but by operation of law; and her convejrance of the slave in question passed an absolute property; for, though it may be that she believed that she only-had a life estate, which she intended to pass by the deed, yet as that conveyed, in terms, all her right and title, it passed the absolute property to the grantee. Wiseley v. Findlay, 3 Rand. 361.
Suppose, however, that in such case an absolute property in the whole does not vest in the first taker, by force of a rule of law rendering the limitation over as to the part undisposed of by the first taker void, and that the intention of the testator in respect to the disposition of such part can be legally carried into effect; still the actual disposition of any part by the first taker, would vest an absolute property in the devisee or vendee, as the case might be, and effectually withdraw it from the operation of the will, directing only that such of the property as remains undisposed of by the first taker, shall at her death be sold &c. The gift or sale of the slave in question, when a sickly and motherless infant of three weeks old, by Mrs. Madden to the appellant, in consideration of her taking care of it and preserving its life, was an intire and absolute disposition of it, as was her subsequent conveyance of it by her deed, not as an executrix, but as a legatee for life with an absolute power of disposition. The suggestion, therefore, in the decree under consideration, that an executor cannot give away his testator’s *property, has no application to the case; but even an executor would have that power, if the intire disposition was given to him by the will.
CABELL, J.
The controversy in this case depends upon the construction of the will of Mabra Madden, the elder; and the question is as to the testator’s intention.
It is agreed, on all hands, that he intended his wife to have a life estate in his moveable property: but the controversy is, whether he did or did not intend to give her any other power over the property than that which would necessarily belong to her as mere tenant for life? It is contended, on the one hand, that she had no ■ other interest or power, than as mere tenant for life; on the other, that she had not only a life estate in the property, but the power to dispose absolutely of any part or of the whole thereof, so as to leave nothing for the daughters, except such as she might fail to dispose of.
There is not, in my opinion, any thing in this will, to justify the belief, that the testator intended thus to subject the interests of his daughters to the power of his wife. It is not usual for the father of a large family to pursue such a course; and I think it an unnatural course, unless there be particular circumstances which require it. In a doubtful case, therefore, I should feel no disposition to attribute such an intention to a testator. But, in this case, the testator has expressed himself so strongly as (in my judgment) to leave no doubt of his intention. The solicitude which he has manifested for the interests of his daughters, is at least equal to that which he has shewn for the interest of his wife, though he has provided for them in different ways. To his wife he gives the enjoyment of the property during her life; but, if there be any force in language, he also intended that his daughters should enjoy it after her death. It is somewhat remarkable, that the clauses of the will on which the question arises, commence and end with the declaration, that his daughters are to have, after the death of his wife, *the benefit of all of his moveable property. This is certainly so, as to the first clause; for the expressions there are, that the moveable property of every description, after the death of his beloved *370 -wife, should be sold, and the proceeds thereof equally divided among the' five daughters. The same idea is as strongly expressed in the last clause, where, after having in the intermediate clause declared that all his moveable property should be at the intire disposal of his wife, he immediately adds, “on her death the same shall be disposed of as above mentioned;” that is, sold for the benefit of his daughters. The word “same,” in the last clause, refers to the property which in the preceding clause he had put at the intire disposal of his wife; viz: all his moveable property. The testator could not have intended, that his wife should have the power to dispose, absolutely, of all his moveable property, so as to leave none of it for his daughters, and yet intend that his daughters should have it all, after her death. The two intentions are inconsistent with each other.' When contradictory expressions occur in wills, it is our duty to reconcile them if we can. As, then, the testator has declared, in the most express and positive terms, that his daughters are to have all his moveable property after his wife’s death, and that in the mean time she is to have the intire disposal of it, it seems to me impossible to resist the inference, that, by the terms intire disposal of his wife, he meant no more than that she should have that sort of intire disposal, which is necessary to the full and uncontroled enjoyment of it during her life. I am therefore of opinion, that the wife took only a life estate under the will, and had no right to give away the slave in question. As to the points of law, which have been discussed at the bar, though not decided by the chancellor, I give no opinion on them; because, according to the view which I have taken of the case, sojne of them can never arise, and because it would be premature to decide the others, before all the parties interested in them shall be brought before the court.
*CARR, J.,
thought the’decreeright in omnibus; but, the other two judges, holding that it was erroneous upon the points before alluded to, as depending upon the peculiar facts and circumstances of the case, involving no general principle, and therefore not necessary to be noticed in the report, the decree was reversed, and the cause remanded to the court of chancery.