EIELD, P.
In the argument of this case the counsel discussed, with great ability and learning, the question as to the validity of the bequest made by Marcus Elcan in favor of 1 ‘The Charity School in Richmond, ” and also whether the suit brought by the Attorney General against Elcan’s executors for the recovery of the legacy could be maintained in his name. If it were material to decide either of those questions, on the present occasion, I should feel greatly at fault, if, with the aid of their learning, I should fail in arriving at a cor-' rect conclusion. But I think, as Judge Robertson did, that it is not necessary to go into the doctrine of charitable uses, or cy-pres appropriations. I shall, therefore, forbear to imitate even the inclination of my mind upon those questions.
It must be admitted, that as the general ■jurisdiction of the Court of Chancery embraced all questions arising upon legal bequests for charitable purposes, or otherwise, properly brought before it, the Chancery Court at Richmond had jurisdiction to try a suit brought against the executors of Marcus Elcan, for the recovery of the legacy bequeathed for the benefit of “The Richmond Charity School,” and to decide whether the suit was properly brought or not, and whether the bequest was legal and valid.
If in deciding either of these questions the court committed an error, it would have been an error in the exercise of jurisdiction, and not in the assumption of an unauthorized jurisdiction. If the former, the decree would be reversable upon appeal, if taken within three years from the date of the final decree; and if not appealed from in three jears, it became forever binding and conclusive between the parties to the decree or privies. No appeal has been taken from the decree of 1811, which was interlocutory, nor*from the final decree of the 10th of June, 1836; consequently, the decree of the 26th June, 1811, after the lapse of three years after June 10th, 1836, became forever binding and conclusive on the executors of Marcus Elcan, deceased; and if the legatees, or next of kin, of Marcus Elcan could compel the executors to pay the legacy of $1,000 to them, •sfith interest, the executors could never have restitution of the fund made to them from any quarter whatever. In their answer to the amended bill, the defendants say that Blair, who borrowed the money, is liable to them for the amount, with interest; that the trustees of the school are also liable, and that the executors of Marcus Elcan are liable because they wrongfully paid away the money. I am willing to concede, that as Lionel Elcan was no party to the suit, nor privy, the decree was not binding on him. Yet, I- say, that neither could Lionel Elcan, if alive, go behind the decree of 1811, and subject either of the persons above referred to, to the irreparable mischief of having to pay over to them the principal and interest of that money, nor can his representatives do so.
The executors of Marcus Elcan qualified as such on the 9th of May, 1808. One year thereafter the legatees had a right to sue for their legacies. Lionel Elcan was then alive, was sui juris, and so continued for many years thereafter. He instituted no suit for the recovery of his legacy, or to test the validity of the bequest to the Charity School. No such suit has been brought even to this day, either by him or by his representatives. An amended bill was filed in this suit in September, 1849, making the representatives of Lionel Elcan defendants, and they filed their answers. Let these proceedings be regarded as equivalent to a suit then brought by the representatives of Lionel Elcan against his executors for the settlement of their executorial accounts and for receiving the amount due on the settlement, and asking the court *to declare the bequest to the Charity ■ School to be void, and to dispose of it according to the rights of the parties. Then we have a case iii which, after the lapse of thirty-eight years from the time when Lionel Elcan could have brought the suit, and after the lapse of thirty-six years from the date of the decree of 1811 affirming the validity of the bequest, the representatives of Lionel Elcan, for the first time, *673 seek to bring the executors of Marcus Elcan to a settlement of their accounts, and to obtain a decree declaring the legacy to the Charity School in Richmond to be void, regardless of the decision made in 1811, or the consequences which would result to the executors from its being disregarded.
Surely, after the decision of the various cases in the Supreme Court of Appeals of Virginia, referred to by Judge Lomax in his 2d volume of the treatise on Executors, page 489, note (p,) shewing that an executor is entitled to be protected against the stale demands of a legatee, and especial^ after the decision made more recently by the Court of Appeals in the case of Smith v. Thompson, 7 Grat. 112, I hazard nothing in saying that such pretensions should be discountenanced by a court of equity.
Whether, therefore, the decree of the 26th June, 1811, was absolutely void for want of jurisdiction in the court, or erroneous because the legacy was void, is a matter of no concern to the appellant, as in neither aspect of the question has he any right to call the executors to a settlement.
But this is not the only ground on which I think the decree should be affirmed. The amended bill was filed for the purpose of making the representatives of Lionel Elcan parties as next of kin of Marcus Elcan, not as legatee; because if it had been necessary to make them parties in respect to legacies, then, for the same reason, Phila Elcan, the widow, Heva Elcan, his sister, and her two sons, Solomon and Elcan, and his nieces, Sally and Mary, all of whom were pecuniary ^legatees of specific sums, should have been made parties also, but which was not done, indicating, clearly, bj' such omission, that Lionel Elcan’s representatives were brought in as next of kin. The amended bill states “that Marcus Elcan died unmarried and without child,” leaving “an only brother, Lionel Elcan, who was his next of kin;” that his estate had been committed to Richard Adams, and sets forth the names of his descendants, all of whom were made parties and answered the bill. Not one of them claimed anything through Lionel Elcan as legatee. The administrator, Richard Adams, refers to the answer of George H. Elcan, son of his intestate, and adopts it as his answer. That answer contests the validity of the bequest, and contends that “the money embraced therein is, for want of capacity in said Charity School and its so-called trustees to take the same, a part of the estate of Marcus Elcan, undisposed of by his will, and now rightfully belongs to his next of kin, and is now recoverable by them against all who have received the same.” On these answers issues were joined.
It is not pretended by these defendants, that the legacy of $500 to Lionel Elcan had not been paid off in full; and no claim having been set up to be allowed to recover out of this alleged void legacy anything on account of an abatement of the legacy of $500, in consequence of deficiency of assets, we are bound by the pleadings in the cause to infer that the legacy of $500 to Lionel Elcan had been paid off in full by the executors, and that the appellant rested his pretensions to recovery wholly upon the ground of his being the next of kin of the testator, and as such entitled to receive the $1,000 as an intestate portion of Marcus Elcan’s estate, under the statute of distributions. In this character the appellant has no interest in the subject of litigation in this suit.
On inspecting the copy of the will in the record, it will be found that the testator has given the residue of his estate to his •widow, in these words: “the residue, *or should any die to whom I have left a legacy in my last will and testament, all such sums and residues I give to my beloved wife, Phila Elcan,” with a contingent limitation over to nephews and nieces “of whatever she may leave.” The effect of these last words was to give to Mrs. Elcan an absolute estate in the residue. (Riddick v. Cohoon, 4 Rand. 547; Melson v. Doe, &c., 4 Leigh, 408.) If the legacy in favor of the Charity School should be declared to be void, it would pass, under the residuary clause, to Mrs. Elcan, (2 Lomax on Executors, 179,) and not to the next of kin of the testator.
The appellant having, therefore, no interest in the fund, that is another reason for affirming the decree. (2 Rob. Prac. 436 ; 2 Rob. Rep. 590.)
TYLER, J.
Marcus Elcan died in 1808. By his will, he bequeathed to the appellant’s intestate $500, to the Charity School in Richmond $1,000, and after several other bequests, the residuum of the estate he devised to his widow. To enforce the payment of the legacy to the Charity School in Richmond, the Attorney-General filed an information, made the executors of M. Elcan parties, and in 1811 obtained a decree. In part satisfaction of this decree, the executors of Elcan paid $500, admitting assets to that amount applicable to the satisfaction of the legacy, but expressing a doubt in their answers whether there would be sufficient assets to discharge and satisfy all the legacies. Some time thereafter, it appears that these executors paid, in further satisfaction of the decree of 1811, $250, arid then the information was dismissed. The Charity School in Richmond having gone down, the appellees claimed the fund (viz: the $750) which had been invested, and to recover the same instituted the present suit in 1836, and the court below decreed in favor of the appellees, from which decree the administrator of Lionel Elcan, to whom the legacy of $500 was bequeathed, appealed to this *Court; and the question is, Has he any such interest in the subject matter of this suit, as would entitle him to appeal?
It is a well-established rule of chancery practice, that a person, to be a party in *674 interest, must be interested in the property involved in the issue. It is not sufficient that he may be interested in the question litigated, qr that by the determination of the' question litigated, he may be a'party in interest to some other suit growing out of the decision of the question litigated. (See Mayo v. Murchie, 3 Munf. 401-2.) If, therefore, this court were to reverse the decree of the court below* and declare the legacy to the Charity- School void, from all that appears in this record, the legacy would fall into the residuum and pass to the widow of Marcus EJlcan or her representatives. But still it might turn out, that the decree of the court declaring the legacy void would give rise to a demand, on the part of the appellant, depending on the facts-: 1st, whether the legacy of $500 to the appellant’s intestate had been satisfied; and, 2d, whether the executors had in their hands (exclusive of this bequest to the Charity School) sufficient to discharge and satisfy the legacy. There is, however, nothing in this record from which this court can infer the existence of such a state, of facts. 'IJhe appellant makes no claim by reason of his intestate being a legatee of the testatoh, whose legacy is .yet unsatisfied; but he claims to be interested in this suit by reason of his being next of kin to the testator, under the delusion that the legacy being declared void, the testator would be considered as having died intestate as to the $750, and that it would pass to him as next of kin. In this, however, he was mistaken. The amount paid over by the executors to the Charity School would fall into the residuum, if the legacy was void, and would not go to the next of kin. Independent of this, if the court is to be governed by inference or presumption, it would presume that the legacy *of $500 to Lionel Elcan had been, fully paid, or if only paid in part, that all claim to the balance had been long since abandoned — it being now about forty-five years since the decree was pronounced, (in 181-1), declaring the legacy to the Charity School valid, and by virtue of which the executors of EJlcan paid over the $750. Without, therefore, expressing any opinion as to the validity of the bequest, to the Charity School, or the title of the appellees to the fund, or the binding efficacy of the decree of 1811, I am of opinion, that these are matters in which the appellant does not appear by the record to have any interest, and that, as to him, the decree should be affirmed.
CLOPTON, J., and THOMPSON, J., concurred with Field, President.
GILME)R, J.,
was for affirming the decree, on the ground that the appellant had no such interest in the subject of this suit as to entitle him to an appeal, but expressed no opinion on the other questions in the case.
Decree affirmed.