## Richmond.

### CARR AND AL. V. EFFINGER AND ALS.

December 13th, 1883.

WILLS—*Construction—Case at bar.*—Testator gave annuity of $100 to his mother, "to be paid out of the money arising from the bonds due me," and then provided as follows : "What money or bonds I have in possession, or judgments due me, I leave unto my beloved wife to be collected, should she think it best, and vested in Confederate bonds, or loaned out at interest. Out of the interest thus arising my wife is to pay to my mother the $100 annually so long as my mother shall live, . . . . . . and the remainder of the interest thus arising is to be used by my wife for her own benefit. I also leave to my wife five shares of stock in the O & A R R, which she is to sell at such time as she may think proper and invest the proceeds in Confederate bonds or loan it out at interest for her benefit. . . . . . . At the death of my wife, what bonds she may not have used I give to my two sisters, C T and L E, and the children of their bodies."

HELD :

> The wife takes an absolute estate in the property, subject to the charge of the annuity to the mother. *May* v. *Joynes,* 20 Gratt. 692.

Appeal of Samuel D. Carr and W. J. C. Waller from two decrees of circuit court of Albemarle county, rendered, one on 18th August, 1882, in vacation, and the other on 13th October, 1882, in the chancery cause of *Effinger, &c.,* v. *Carr, &c.,* wherein appellants are defendants.

Opinion fully states the facts.

*S. V. Southall* and *J. M. White,* for the appellants.

*J. H. McCue, T. P. Fitzpatrick, C. L. Martin* and *S. M. Johnson,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The controversy in this case involves and must turn upon the proper construction to be given to certain clauses, and especially the 6th and 7th clauses, of the will of John Diggs, late of Albemarle county. In order to a proper understanding of said clauses it is necessary to notice as immediately connected therewith the next preceding or fifth clause of said will.

"5th. It is my will and desire that my mother be paid one hundred dollars annually, out of the money arising from the bonds due me, so long as she may live."

"6th. What money and bonds I have in possession, or judgments due me, I leave unto my beloved wife, to be collected, should she think it best, and vested in Confederate bonds or loaned out at interest. Out of the interest thus arising my wife is to pay to my mother the one hundred dollars annually so long as my mother shall live, as hereinbefore devised in clause the fifth, and the remainder of the interest thus arising is to be used by my wife for her own benefit. I also leave to my wife five shares of stock in the Orange and Alexandria railroad, which she is to sell at such time as she may think proper, and vest the proceeds in Confederate bonds or loan it out at interest for her benefit. She shall also be entitled to any dividends arising from said railroad stock."

"7th. At the death of my wife, what bonds she may not have used I give to my two sisters in Missouri—namely, Caroline Thomas and Lucinda Effinger, and the children of their bodies."

It is proper, before proceeding to discuss these provisions of the testator's will, to state so far as necessary the facts and circumstances as disclosed by the record.

The testator, John Diggs, died in 1863, and his will was admitted to probate at the May term of the county court of

Albemarle county of that year. Testator's mother died before he did, and his wife, Lucy B. Diggs, died in May, 1880. The testator was possessed of a large estate, real and personal, all of which he disposed of by his said will. And in the eighth and last clause of his will the testator appointed his wife his executrix, alluding to her as his beloved wife, Lucy B. Diggs, and requested that no appraisement of his estate be had and no security required of her as executrix.

Among the assets of the testator's estate which went into the hands of his wife, the said Lucy B. Diggs, was a bond executed to the testator by Marcus Durrett on the 1st day of March, 1862, for $3,000, the amount of Confederate money then loaned said Durrett by the testator, John Diggs, upon which bond was credited as of March the 9th, 1863, $180, one year's interest.

It further appears that testator's wife, Lucy B. Diggs, was the daughter of Dabney Carr, deceased, and brother of the appellant, Samuel D. Carr. Dabney Carr died in the county of Albemarle in 1862, and Marcus Durrett, the obligor in said $3,000 bond, qualified as his sole executor, and as such, in November, 1862, sold, as directed by the will, the real and personal estate of his testator, for Confederate money, at which sale the appellant, Carr, became the purchaser of the land, 530 acres, at the Confederate price of $17.55 per acre, aggregating $9,301.50.

Mrs. Diggs, some time in the year 1863, disposed of said $3,000 Durrett bond as a gift to her brother, the appellant, Samuel D. Carr, who used the same in settling or paying the balance due from him to said Marcus Durrett, as executor of Dabney Carr. This occurred probably in September, 1863, when, so far as disclosed by the record, it does not appear that the appellant, Carr, had any knowledge or had ever heard of the claim of the appellees to said $3,000 bond, or had even ever seen the will of John Diggs.

In June, 1871, the appellant, Carr, having heard of the claim asserted by the appellees, an arrangement was entered into by which Mrs. Diggs executed a deed conveying certain real and personal property to Drury Wood, in trust to secure and indemnify her said brother, the appellant Carr, against any loss or liability by reason of the gift of said $3,000 bond, and the use made of it by him.

In September, 1881, George M. Effinger and Lucinda Effinger, his wife, and William Thomas and Caroline Thomas, his wife, filed their bill against the appellants and others, alleging among other things that under the will of the testator, John Diggs, his wife (Lucy B. Diggs) took only a life estate in the debts (including said $3,000 Durrett bond) and judgments due the testator, and that she could only use for her own benefit the interest arising therefrom, and that at her death, under the 7th clause of the testator's will, said debts, &c , including the said Durrett bond, belonged to Mrs. Effinger and Mrs. Thomas.

The plaintiffs, in their said bill in the court below, further allege that subsequent to the transfer of said $3,000 bond to S. D. Carr by Lucy B. Diggs, she, in consideration of "natural love and affection," and for no other consideration, conveyed to her brother, said S. D. Carr, all her estate, real and personal; that said S. D. Carr invested this identical $3,000 Durrett bond in a tract of 400 acres of land in Albemarle county, on which he resided at the filing of said bill; and that this is the same land bought by said Carr of Marcus Durrett, executor of Dabney Carr; that on the 21st day of June, 1871, S. D. Carr re-conveyed to Mrs. Diggs a tract of 120 acres theretofore conveyed by her to him, with the understanding that Mrs. Diggs should simultaneously convey said 120 acres in trust to indemnify and save harmless the said Samuel D. Carr from the claims of Mrs. Effinger and Mrs. Thomas, and that conveyance was accordingly so made; that subsequently—to-wit: on the 31st day

of August, 1877, Mrs. Diggs conveyed said 120 acres to Dr. W. J. C. Waller, one of the appellants here. And the plaintiffs in their bill claim the right to subject to the satisfaction of their demand both of said tracts of land.

The defendants (appellants here) severally answered, denying the claim of the plaintiffs, and insisted that under the will of the testator Mrs. Diggs, his widow, took an absolute estate in the property in question, and that her disposition of the bond in question to the said Samuel D. Carr, conferred upon him a like estate therein, with the right of disposition. It is unnecessary, in the view of the case taken by this court, to take further notice of the proceedings had in the court below than to refer briefly to the two decrees complained of.

After much evidence was taken the cause was submitted for decision in vacation, and on the 18th day of August, 1882, a decree was pronounced, "that the plaintiffs recover of the defendant, Samuel D. Carr, the amount of said bond of $3,000, in the bill mentioned, ascertained to be $2,307.68, with interest from March 1st, 1862, till paid . . . . . ; and . . . that this identical bond having been invested by the defendant, S. D. Carr, in the lands he now holds, these lands now held by him are liable in his hands as a trust for the payment of the above sum."

This decree being vague and uncertain in its terms, at the succeeding October term of said court, on motion, the same was reformed and modified so as to read: "That the plaintiffs recover of the defendant, Samuel D. Carr, the sum of $2,307.68, with interest from March 1st, 1862, subject to a credit of one year's interest, endorsed upon a copy of said bond, filed by said Carr with his depositions. And it appearing to the court that the aforesaid bond bears date March 1st, 1862, and was payable on demand, and that it was a transaction for Confederate money, it is of opinion, and doth decide, that it should be scaled as of its value at

that date in good money . . . at $1.30, as of March 1st, 1862 . . . ; and the same should not be scaled at any other rate or at any different time."

These are the decrees complained of and appealed from. In our view of this case, the whole matter is resolved into this: Did the testator, by his will, intend to give to his ·wife, Lucy B. Diggs, the absolute property or estate in the money, bonds and judgments, and shares of railroad stock mentioned in the 6th clause of his will; and, if so, subject to what charge?

It is the *will* of the testator that we are called on to con-·strue. It is his last solemn act touching his worldly goods. It is his testamentary disposition of his property—the last and highest exercise of the right of absolute dominion over his property. A will is an instrument employed for the sole purpose of *disposing* of one's property. As it can take effect only at the death of the person making it, when he can no longer give directions and exercise dominion and control, the will is required to be in writing as the best evidence of the intention of the testator respecting his property after his death.

It is therefore the intention of the testator, as expressed in his written will, to which we must look, which we must ·obey, and to which all other considerations must yield absolute obedience. This intention, as quoted in argument from the remark of a great judge and author, "is the Polar star of construction." It will be, and is conceded by all, that the intention of the testator is to be collected from the whole will, so construed as that, if possible, the whole and each part take full effect. Nor can any one successfully deny that when no terms of art or technical terms are employed, but plain, every-day language is resorted to, the testator must be taken to have used the words or terms ·employed in accordance with their common acceptation ·and ordinary meaning, not forgetting that the words thus

used are in the testator's will, and could have been used only for the purpose of *disposing* of his property as seemed to him best.

In the clauses of the will here to be construed there are no technical terms used, no words which have received, from a long line of judicial decisions, fixed legal significations, and necessarily, therefore, to be construed in subordination to technical rules. On the contrary, the words used are plain and artless, except as the common signs of common ideas. If in the use of such language the testator has intelligibly expressed his intention, effect must be given to it, aside from and independent of all technical rules; the cardinal rule in such case being that the testator must be taken to have meant what he said.

The contest in this case hangs upon the meaning, as employed, of the words "leave" and "used," which occur in the 6th and 7th clauses, respectively.

The first part of the 6th clause reads: "What money and bonds I have in possession, or judgments due me, I leave unto my beloved wife, to be collected should she think it best, and vested in Confederate bonds or loaned out at interest." This language, taken alone, certainly conveys the idea of absolute ownership, thereby intended to be vested in the testator's " beloved wife," Lucy B. Diggs. This conclusion is irresistible if we but reflect that the very comprehensive word "leave" used in a will, is used only to signify the *disposing* intention of the testator with respect to his property—his estate; that, so employed, the meaning is the exact equivalent and imports the same as if the language had been, " I leave by this my will, or I give by this my will, to my beloved wife, &c." The words "leave" and "give," especially when used in a will, without qualifying or restraining words, are interchangable terms and mean one and the same thing. This might be illustrated by many examples, but it is unnecessary to give them, as they will readily suggest themselves.

It is true that, in the language of the clause above quoted, the testator suggests the collection of the funds and the investment of it in Confederate bonds, or the loaning of it at interest; but this is a mere suggestion, is simply directory in its character, the wife having an absolute discretion in the premises, and the right to collect or not, to invest, or loan, or not, as to her might seem best.

Such being the effect of the first part of said 6th clause, the rest of it, hereinbefore given, does not reduce the absolute estate thereby created to a mere life estate in Mrs. Diggs. The preceding 5th clause secures an annuity to the testator's mother of $100; and in the latter part of the 6th clause the testator says: " Out of the interest thus arising, my wife is to pay to my mother the one hundred dollars annually," &c.; and then, in the conclusion of same clause, the testator leaves to his wife certain shares of railroad stock, to be sold by her and the proceeds invested in Confederate bonds, or loaned out at interest for " her benefit." And this same 6th clause expressly gives the remainder of the interest, after paying the annuity, to Mrs. Diggs, the wife of the testator, thus clearly enforcing the idea that his intention was to give absolutely to his wife the money, bonds and judgments, charged only with said annuity. If this be not so, then the testator died intestate, certainly, as to the money, the judgments and the railroad stock, he having attempted, it seems, to provide for his sisters in Missouri, only as to the *bonds* which were *due him*, and as to them only upon the contingency, as expressed in the 7th clause, that his wife should not use—in other words, should not dispose of them, during her life. It is impossible, with due regard to the testator's expressed intentions, to say he did not give, by his will, the property in question absolutely to his wife. That he had in his mind to make some provision for his sisters in Missouri, Mrs. Effinger and Mrs. Thomas, is true, and he did make such provision, but upon

the above mentioned contingency, of his wife's not using or disposing of the *bonds due him,* to which their claim would necessarily have to be confined, even had Mrs. Diggs not disposed of them.

It is strenuously insisted by counsel for the appellees that the use given by the testator to his wife, of the property bequeathed by the 6th clause of his will, was intended as use to be made by her as his executrix in the payment of debts. This position is in conflict with the manifest intention which pervades the whole will. Counsel, to enforce this idea, are driven to the necessity of striking out the word "wife" wherever it occurs in this clause, and substituting therefor the word "executrix." There is nothing in the will which in the remotest degree warrants such a liberty with the plain language used by the testator. If there could be any reasonable doubt as to the intention of the testator in the use of the word "leave," as employed in the 6th clause, that intention is made manifest by the language "what *bonds* she may not have *used,*" employed in the 7th clause, which, taken in connection with the preceding clause, and in connection with the whole will, necessarily imports absolute ownership and the consequent right of disposition in Mrs. Diggs. The testator's object was not to confer power upon his executrix to pay his debts, for an executor or executrix always has that authority; but to bestow bounty upon his wife, and to bestow such bounty, it is apparent, was the prevailing thought with him. Repeatedly she is referred to in his will, and almost every time, as his "beloved wife." It is only by the last clause of the will that she is named as executrix, and even then the prevailing idea of affectionate regard and almost entirely unrestrained bounty is uppermost in the testator's mind, for he there dispenses with an appraisement of his estate and requests that no security be required of her as executrix.

It is also urged in favor of the appellees that wherever in the will the testator intended to give an estate in fee, he used the appropriate language for the creation of such estate; and that as there is no such language in the sixth clause of the will, he could not have intended thereby to pass to Mrs. Diggs an absolute estate, in the property in question. A mere casual inspection of the will, will demonstrate that no aid can come to the appellees from this argument; for in the third and only clause in which he limits his bounty to his wife to less than an estate in fee, he is equally careful to use the necessary restraining language.

The opinion of the court below appears at large in the record. The judge of that court seems to proceed upon the idea that, in the absence of technical words of inheritance, as in this case, a fee cannot pass. And he relies upon *Riddick* v. *Cahoon*, 4 Rand. 547, and that class of cases. It is true that, in the case named, words of inheritance were used, "*and his heirs*," but it is equally true that, in the case of *May* v. *Joynes*, 20 Gratt. 692, the testator, Judge May, left his estate to his wife "*during her life*," and then used additional words which gave the wife an absolute power of disposition; and it was these words which created in her an absolute estate, and not words of inheritance. Many other authorities are referred to by the judge of the court below. It is useless to discuss or refer to them further, than to say they have no application to the case in hand—certainly none favorable to the decree rendered below.

We should remember, as a great truth, the remark made by Judge Pendleton, delivering the opinion in *Kennon* v. *McRoberts*, 1 Washington, 131, and quoting from able judges who had gone before him, "that cases on wills serve rather to obscure than illuminate questions of this sort. . . . That cases on wills may guide as to gene-

ral rules of construction, but unless a case be in every respect directly in point and agree in every circumstance, it will have little or no weight with the court, which always look upon the intention of the testator as the Polar star to direct them in the construction of wills."

· We think *May v. Joynes, supra,* as near as could well be, authority directly in favor of the claim of the appellants. Indeed, we think the case under consideration a stronger one for passing an absolute estate in personalty than *May* v. *Joynes* was. We are of opinion, therefore, that Mrs. Diggs took under the will of her husband an absolute estate in the money, bonds, judgments and railroad stock mentioned in the sixth clause thereof, and that the court below erred in holding to the contrary. The decree of the court below must be reversed with costs to the appellants, and a decree entered here dismissing the bill of the plaintiffs in that court.

DECREE REVERSED AND BILL DISMISSED.