Statement.

## Richmond.

FARISH, TRUSTEE, AND OTHERS v. WAYMAN, TRUSTEE, AND OTHERS.

APRIL 25, 1895.

Absent, Keith, P.*

1. WILLS—*Devise for Life with power to dispose of Fee.*—A devise of an estate for life, coupled with the absolute power of alienation, either express or implied, comprehends everything, and the devisee takes the fee.

2. WILLS—*Devise to A for Life, and what remains of same to B.*—A devise to A for life, but should "she die and leave no child, in that case the property devised as above, *or what may remain of the same*," to go to B, gives A the unrestrained power of disposition of the whole property, and thus converts her life estate into a fee.

3. TRUSTS—*Settlement between Trustee and Beneficiary—Laches.*—Where a *cestui que trust*, who is *sui juris*, has a settlement with the trustee, which is acquiesced in for twenty years, or more, such settlement will not be disturbed, though some rights of the *cestui que trust* may have been violated thereby.

Appeal from decrees of the Circuit Court of Fauquier county, pronounced December 19, 1889, April 9, 1892, and September 15, 1892.

*Affirmed.*

John Wayman, trustee, and others filed their bill in the Circuit Court of Fauquier county against the heirs of James Colbert and others, for the purpose of having an account of

---

*Judge Keith decided the case in the court below.

debts of said Colbert, and their relative priorities, an account of the real and personal estate whereof said Colbert died seized and possessed, the fee-simple and annual rental of said real estate, and to subject said real and personal estate to the payment of said debts. Pending the proceedings had in this suit, the appellants filed their petition, from which the following abstract is made:

"Your petitioners, ———, trustees of Priscilla Agnes Farish, Robert S. Farish, Robert A. Latham and Nancy, his wife; F. A. Hoffman and Lillie A., his wife, [represent] that Joseph B. Redd, an uncle of your petitioner, Priscilla Agnes Farish, died in the county of Culpeper, in the year 1853, after having first made his will, the fourth clause of which reads as follows:

'I give to my brother, Wm. Redd, and my brother-in-law, James A. Colbert, one share of my estate, to be held by them in and for the benefit of my niece, Agnes Priscilla Redd (meaning your petitioner), daughter of my brother James A. Redd, during the natural life of the said Agnes Priscilla Redd; and should the said Agnes Priscilla Redd die and leave no child, in that case the property devised as above, or what may remain of the same, I give to my sister, Nancy J. Massey.'

"The greater portion of the estate of the said Joseph B. Redd consisted of real estate, which was sold under decrees of the Chancery Court of Culpeper county, in the chancery cause of *Freeman and wife* v. *Redd*, and the interest devised under the said fourth clause of said will paid over by the commissioner of the court to James A. Colbert (commonly spoken of in this suit as James Colbert), who alone took upon himself that burden of executing the trust under said fourth clause of said will, the said William Redd having declined to act. The *ex parte* settlements of said trustee show that, after the payment of costs, he received, as principal, the sum of $1,415.92, to be held by him upon the trusts created in the fourth clause of

said will. The last *ex parte* settlement of said trustee was made in 1861, at which time said settlement showed that said trustee had in his hands the whole of said principal sum, $1,415.92, and about $80 of interest. Said trustee, James Colbert, died many years thereafter —to-wit, in the year 188—, but never settled any other or further account showing the state and condition of the trust fund.

"Your petitioners are informed that the administrator, O. R. Colbert, claims that sundry and large payments were made the said P. A. Farish by the said trustee after his last settlement, especially the sale by the trustee of one hundred and nine acres of his own land, for the gross sum of $1,200, and the building of a house upon said land for $300.

"Now, your petitioners insist—

1st. That the proper construction of said fourth clause of the will of Joseph B. Redd gives to said Priscilla A. Redd (then Farish) only a life estate, and, at her death, the principal of the fund to go to her children, but if she dies leaving no child, then to the said Nancy J. Massey, and therefore that the estate of the said James Colbert is now indebted to your petitioners in the said principal sum of $1,415.92, supposing he has kept down the interest. It may be the right of the estate to have the real estate conveyed your petitioner, P. A. Farish, sold, and the proceeds held by the trustee of your petitioner as a credit upon said amount due.

2d. If, however, your honor should so construe the fourth clause of said will as giving to your petitioner, P. A. Farish, an absolute fee-simple estate, still your petitioner, P. A. Farish, respectfully insists upon her right to reject the benefit of said sale and conveyance by said trustee of his own land to pay the trust debt to your petitioner. Your petitioners charge that the land so conveyed the said P. A. Farish was not worth the sum of $500; whereas she is charged with the sum of $1,200. If, therefore, the court should be of opinion

that the said P. A. Farish takes a fee-simple estate, she, the said P. A. Farish, insists that the said one hundred and nine acres conveyed her should be sold at the risk of the said James Colbert, and the net proceeds alone credited on the trust fund in his hands.

The administrator of James Colbert and the children and administrator of Nancy J. Massey (who had died) were made parties defendants to this petition. On the hearing, September 15, 1892, the petition was dismissed with costs. The other facts sufficiently appear in the opinion of the court.

*Rixey & Barbour*, for appellants.

*Eppa Hunton, Jr.*, for appellees.

HARRISON, J., delivered the opinion of the court.

The language of the fourth clause of the will of Joseph B. Redd is as follows:

"I give to my brother William Redd and my brother-in-law James A. Colbert one share of my real estate, to be held by them in trust and for the benefit of my niece Agnes Priscilla Redd, daughter of my brother James A. Redd, during the natural life of said Agnes Priscilla Redd; and, should the said Agnes Priscilla Redd die and leave no child, in that case the property devised above, *or what may remain of the same*, I give to my sister Nancy J. Massie."

The question to be determined is, Did Agnes Priscilla Redd take a *fee simple* in the trust fund created by the clause quoted, or did she take only a *life estate* therein?

It cannot be longer doubted that the law is settled by the courts and text-writers everywhere, of the highest authority, *that an estate for life, coupled with the absolute power of alienation, either express or implied, comprehends everything, and*

*the devisee takes the fee.* So firmly fixed is this principle of law, that it may now be regarded as a canon of property.

In this view of the law, the real question to be determined, in construing the language under consideration, is this: Whether or not the devise in trust for the benefit of Agnes Priscilla Redd is coupled with the unrestrained power in her to dispose of the property. In this connection, the language to be interpreted is as follows: "Should the said Agnes Priscilla Redd die and leave no child, in that case the property devised as above, *or what may remain of the same,* I give," etc.

This language cannot be reasonably construed otherwise than that the devisee under it has not only the power to use this property, but to consume it, if she will. The gift over at her death of what *"may remain of the same"* shows that the testator intended, notwithstanding the direction that the property was to be held by the trustees named, during her natural life, that she should have the power to dispose of, consume, or spend it in her lifetime, which she could only do by being invested with the fee-simple. What might remain of the same was all that was to go over. The language forcibly implies an unlimited and unqualified power of disposition. The devisee could acquire no greater estate, nor exercise greater power over it. To put any restriction upon her absolute dominion over it would be to say that the whole, or some part of it, should go over to the second taker, when the will expressly says that only *"what may remain of the same"* shall pass to the second taker.

In 2 Minor's Insts. 969, 970, it is said: "Although a devise be expressly for life of the devisee, yet if the devisee be, by other clauses of the will, permitted to use and dispose of the subject absolutely at his pleasure, or if so much as may remain undisposed of by him at his death (which implies a power of unqualified disposition) be given over at his decease, the de-

visee is construed, by a necessary implication of the testator's intention, to take a fee-simple.''

It was said by Judge Green in *Madden* v. *Madden,* 2 Leigh, 377, in an able review of the cases on the subject, that it was settled law that *whenever there is an interest given, coupled with an absolute power of disposition in respect to all property of every description, real and personal, the first taker would have the absolute property, and that there was no distinction between a case of a gift for life, with a power of disposition added, and a gift to one indefinitely, with a superadded power to dispose of by deed or will.*

In *May* v. *Joynes,* 20 Gratt. 692, the testator gave his whole estate, real and personal, to his wife, for life, with full power to dispose of it, and use the purchase money for investment, or any purpose that she pleased, with this restriction: that *whatever remained at her death* should be divided among his children and grandchildren. Though the gift was to the wife *expressly for life,* it was held that she took a fee-simple in the real estate, and an absolute estate in the personalty, and that the gift over was void for repugnancy and uncertainty. See, also *Shermer* v. *Shermer's Ex'or,* 1 Wash. 266; *Riddick* v. *Cohoon,* 4 Rand. 547; *Melson* v. *Cooper,* 4 Leigh, 409; *Brown* v. *George,* 6 Gratt. 424; *The Missionary Society of the M. E. Church* v. *Calvert's Adm'r et als.,* 32 Gratt. 357; *Carr et als.* v. *Effinger et als.,* 78 Va. 197; *Cole* v. *Cole et als.,* 79 Va. 251; *Hall* v. *Palmer,* 87 Va. 354; *Bowen* v. *Bowen,* 87 Va. 438.

The cases cited clearly establish that whenever it is the intention of the testator that the devisee shall have an unrestrained power of disposition over the property devised, whether such intention be expressed or necessarily implied, a limitation over to another is void, because it is inconsistent with, and repugnant to, the estate given to the first devisee, although the will shows that it was the testator's intention,

in respect to the property given to the first taker, that "what may remain of the same," or "whatever may remain at his death," or "so much thereof as may be in existence at his death," or "such part as he may not appropriate," or "what may be on hand at his death," should go to another. Such intention must fail on account of its uncertainty, and the first taker acquires the absolute property.

It follows from the foregoing statement of the law, that Agnes Priscilla Redd took a fee-simple in the estate devised for her benefit, under the fourth clause of the will of her uncle, Joseph B. Redd.

It appears that in August, 1870, James A. Colbert, acting trustee, had a settlement with his *cestui que trust*, then Mrs. Agnes P. Farish—a widow with a number of children—as a result of which he conveyed to her a tract of land containing one hundred and nine acres, and improvements, in full settlement of her estate derived under the will of Joseph B. Redd, which was about $1,500. Mrs. Farish took possession, and has lived on the land ever since. James A. Colbert, the trustee, is now dead, and his estate is being settled in this case. Mrs. Farish and her children—all now grown—file a petition, and insist that Colbert's estate must be charged with this $1,500, and credited by the true value of the land conveyed to her in 1870. Some evidence is taken tending to show that the land was not worth $1,500, but very much less. If Mrs. Farish had rights which were violated in this transaction, her laches would now preclude the assertion of those rights. A time must come when the transactions of life can be regarded as closed. Mrs. Farish has quietly enjoyed the fruits of her bargain, as a home, for a quarter of a century. She was never heard to utter a word of complaint, until the petition was filed in this case by herself and children, twenty years after the purchase of the land. There is no charge of fraud in the petition. James A. Colbert is unable

to speak and give any explanation of the circumstances which led to the transaction.    Mrs. Farish was *sui juris*—as capable of contracting as Colbert; and though she were to succeed in showing, as far as it was possible to do after such a lapse of time, that the property was not worth what she gave for it, she could not be permitted now to repudiate a contract solemnly entered into and acquiesced in, as this has been.

For the foregoing reasons the court is of opinion that there is no error in the decree complained of, and it must be affirmed.

AFFIRMED.