**Richmond.**

HALL v. PALMER.

January 22d, 1891.

WILLS—*Construction*—*Repugnancy.*—Testator said : " I bequeath to my five
daughters   *   *   *   two-thirds of my estate,  *  *  to be equally
divided between them," and afterwards, that the interest of two of
them should be held by his executor "for the sole use and benefit of
them during their natural life, and at their death, the balance, if any,
to their children": *held,* the two daughters took an estate in fee-sim-
ple absolute, and the limitation over was void for repugnancy.

Appeal from decree of circuit court of Halifax county, ren-
dered February 16th, 1889, in a chancery cause wherein P. J.
Palmer and others, the· heirs-at-law of Susan J. Hall, de-
ceased, were complainants, and Prudence E. Hall, the widow
and sole devisee of Elijah C. Hall, deceased, was defendant.
The decree being adverse to the defendant, she appealed.
Opinion states the case.

*Guy & Gilliam* and *W. R. Barksdale,* for the appellant.

*John W. Riely* and *Henry Edmunds,* for the appellees.

LACY, J., delivered the opinion of the court.

In a suit for the partition of a tract of land in the said
county of Halifax, the true construction of the will of the late
Philip Johnson, who died in 1849, was drawn in question.

The sections or clauses of the said will drawn in question by this appeal are the third and eighth clauses of the said will.

The third clause is as follows: "I give and bequeath to my five daughters as follows—viz., Nancy H. Terry, Judith Palmer, Mary C. Taylor, J. Hall, and Frances Maria Armes—two-thirds of my estate now in possession, to be equally divided between them."

The eighth clause is as follows: "I will and direct that the whole of Susan J. Hall's and Frances Maria Armes's interest in my estate shall be held by my executor, his heirs, executors, and administrators or assigns, for the sole use and benefit of them during their natural life, and at their death *the balance, if any,* to their children."

Susan J. Hall died, leaving her husband her surviving. The son lived to be twenty years old, and died, his father surviving him. The father married a second wife, and died, leaving her surviving, and by his will devised the land in question to his said second wife, the appellant here.

This controversy has arisen between the widow of Elijah C. Hall, the said appellant, and the heirs-at-law of Susan J. Hall, his first wife, and the devisee under the will of Philip Johnson, and the question to be decided between them is what estate did the said Susan J. Hall take under the will of her said father, set forth above.

The learned judge of the circuit court held that "Susan J. Hall took an absolute and fee-simple estate in the property given to her under the will of Philip Johnson, and that the gift over, under the eighth clause of the said will, ' of the balance, if any,' is void, both for repugnancy and uncertainty, and that the land in the bill and these proceedings mentioned passed, at the death of her husband, Elijah C. Hall (who had an estate for life therein as tenant by the curtesy,) to the heirs-at-law of the said Susan J. Hall." Whereupon the appellant, Prudence E. Hall, the widow and devisee of the said Elijah C. Hall, applied for and obtained an appeal to this court.

We think the decree of the circuit court, cited above, is plainly right. It sets forth what is the plain and explicit direction of the will, and no other construction of that instrument is reasonable upon the face of it, and it is in accordance with the manifest intention of the testator, to be gathered from the words employed to express his intention, and it is not necessary to call to our aid any decisions or precedents in such a case.

And, as was said by Judge Richardson, in *Carr* v. *Effinger*, 78 Va., 206: "We should remember, as a great truth, the remark·made by Judge Pendleton in *Kennon* v. *McRoberts*, 1 Wash., 131, and quoting from able judges who had gone before him, 'that cases on wills seem rather to obscure than illuminate questions of this sort; that cases on wills may guide as to general rules of construction, but, unless a case be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the courts, which always look upon the intention of the testator as the polar star to direct them in the construction of wills.'" Yet the language of courts, when they speak of the prevailing intention as the governing principle, must be "understood with this important limitation, that here, as in other instances, the judges submit to be bound by precedents and authorities in point, and endeavor to collect the intention upon grounds of a judicial nature, as distinguished from arbitrary occasional conjecture." Jar. on Wills, 2, 838.

In the case of *Riddick* v. *Cahoon*, 4 Rand., 549, Judge Green, speaking of a case where the property was given to the daughter absolutely and in the strongest terms, with the provision that if the daughter should die without lawful heir or issue of her own body, then what was given to the daughter, *that shall be left remaining at her death*, to his sisters, said: "What did the testator mean by these words 'that shall be left remaining at her death'? Did he mean that all the property given to his daughter, which did not perish in her life-time, should imme-

diately, upon her death, go over, if she had no issue then living? Or did he mean all the property which she had previously disposed of should go over upon failure of her issue, whenever that event might happen?"

The first construction is that contended for by the appellant. The latter, I think, is the true construction. The testator had given to his daughter, and her heirs and assigns forever, an absolute estate, and intended not to restrain the unlimited power of alienation incident to that estate, but to control the future disposition of so much of the property as she might not dispose of in her life-time, and that it should go to her issue, if she had any, as long as they existed; and, upon the failure of issue, to his sisters, or their representatives.

If, however, the conclusion last stated is not correct, and the testator intended to give over the property left only in the event of his daughter's dying without issue living at the time of her death, it is clear that he intended to give to his daughter an absolute power of alienation; and, in that case, could not control the property not disposed of by her, as such control would be inconsistent with the nature of the estate given to her, and the limitation void for uncertainty as to what property was to go over. Citing *Gray* v. *Montagu*, decided by Lord Chancellor Northington in 1764, and his decree affirmed in Parliament in 1770, 3 Brown Parl. Cas., 314, to the same effect, and saying: "There are other cases to show that, after an absolute property given to one, with an unlimited power to dispose of it, express or *implied*, a disposition by the donor of so much of the property as may not be disposed of by the donee or legatee, to another, is void, because of the inconsistency and the uncertainty as to what part of the property is to go over." See also the case of *Peckman* v. *Filliter*, 3 Ves., 7, with the provision "what shall be left"—held by the Master of Rolls to be an absolute gift to the wife; *Bull* v. *Kingston*, 1 Meriv., 314, with the provision "whatever shall remain at her

death"; *Att'y-Gen'l* v. *Hall*, 8 Vin. Abr., 103, pl. 50; opinion of Lord Hardwicke in *Flander* v. *Clark*, 1 Ves., 9; *Miller* v. *Moon*, Vin. Abr., 248, pl. 21, with the provision "or make no disposal of," which was held to give a fee-simple—opinion of the Master of the Rolls; *Henderson* v. *Cross*, 29th Beav., 220, with the provisions "to spend both principal and interest, or any part of it during his life-time," and "should my dear father not spend the property which I leave in trust for him"; the case of *Elcan's Adm'r* v. *Lancastrian School and others*, 2 Pat. & Heath, 53, with the provision "of whatever she may leave" at her death; *Burwell* v. *Anderson*, 3 Leigh, 348, with the provision "by will or otherwise, may have the absolute disposal of"; *Nelson* v. *Cooper*, 4 Leigh, 408, with the provision "if he should die without a son, and not sell the land"; *Brown* v. *George*, 6 Gratt., 424, with the provision "so much of the property as might be in existence at the death of the first taker"; *Carr* v. *Effinger, supra*, with the provision "at the death of my wife, what bonds she may not have used I give"; *Cole* v. *Cole*, 79 Va., 251, with the provision "that may be on hand," "giving the wife the absolute disposal of the personalty"; *The Missionary Soc., &c.*, v. *Calvert's Adm'r*, 32 Gratt., 357, with the provision "but such part as she did not appropriate should pass at her death," &c., are to the same effect. See also Min. Inst., Vol. II, pp. 969, 970.

In this case the gift was to the daughter of one-fifth of two-thirds of the estate, in absolute property. It is then provided that this estate shall be held by the executor for her *sole use and benefit* during her natural life, and at her death the *balance, if any*, was to go to her children. It was the evident intention of the testator that the daughter was to use and enjoy and expend whatever she wished of this estate, and her right to do this is not limited to any degree; and the provision "the balance, if any," cannot be construed to limit her power of disposal, which is absolute and unlimited, as an incident to

the estate granted, and the provision for her children is void for repugnancy and uncertainty, and cannot be held to limit the estate which was granted to the daughter. .

As we have said, we think the decree complained of is plainly right, and the same must be affirmed.

DECREE AFFIRMED.