# CHARLESTON.

NATIONAL SURETY COMPANY *v.* S. B. JARRETT, *et als.*

Submitted January 9, 1924.    Decided January 22, 1924

1. WILLS—*Unequivocal Power of Absolute Disposition Elevates Life Estate Into a Fee.*

   Where a life estate is given by a will, and an unequivocal power of absolute disposition of the same property is also given, the latter generally prevails and has the effect of elevating the life estate into a fee.   (p. 422).

2. SAME—*Provision Vesting Life Tenant With Authority to Sell When Necessary for His Benefit Creates Fee.*

   Where a will in addition to vesting a life tenancy in real estate in a devisee, also empowers the devisee to dispose of the property whenever necessary for his benefit, use and comfort, and provides that the portions remaining at his death, if any, shall be divided in a manner specified, the power vested in the devisee is that of absolute disposition and he will be decreed the fee simple ownership of the property. (p. 423).

Suit by the National Surety Company, assignee, etc., against S. B. Jarrett and others. A demurrer to the bill was sustained, and the question certified.

*Ruling reversed.*

*Brown, Jackson & Knight,* for plaintiff.
*W. E. R. Byrne,* for defendants.

MEREDITH, PRESIDENT:

The State of West Virginia, suing for the use and benefit of the county court of Kanawha County, obtained a judgment for $71,500.00 against S. B. Jarrett, former sheriff of the county, and the National Surety Company. The latter company as surety on Jarrett's official bond paid the state the full amount of the judgment and having been subrogated to the rights of the state, brings this suit against Jarrett, praying that he be declared the fee simple owner of certain real estate described in the bill, and that the same be sold in satisfaction of the judgment lien. The bill is demurred

to on the ground that, as shown by the bill, Jarrett was not vested with a fee simple estate in the property described therein, but with a life estate only. Jarrett held title under a will from his wife, and demurrants, his heirs and next of kin, claim as reversioners under that will. The circuit court sustained the demurrer, and, upon the joint application of the parties to the suit, certifies to this court the question "whether or not the estate of S. B. Jarrett under the will of Mary Jarrett, referred to and described in the bill in this cause, a copy of which will is exhibited with said bill, is an estate in fee in said lands or is an estate for life, or if not either in fee or for life, what the exact nature and extent of said interest of said S. B. Jarrett is."

The portions of the will which are to be construed read:

> "I give, devise, bequeath unto my husband Squire B. Jarrett all of my personal and real property of whatsoever nature and description I may own or possess at the date of my decease, to be held by him during his natural life and at his death the same to be equally divided between his and my heirs.
>
> "If it becomes necessary for his benefit, use and comfort to dispose of same during his natural life then he may do so and at his death the portions remaining, if any, shall be divided as aforesaid."

The sole question, as presented by the certificate, is as to the nature of the estate acquired by Squire B. Jarrett under the paragraphs of the will above quoted.

Plaintiff contends that the property right devised was a fee simple estate, asserting the two following propositions:

"1.   That said will confers upon S. B. Jarrett the absolute power of disposal of the estate mentioned therein, and,

2.   That under the law as laid down by the adjudicated cases of West Virginia, when a life estate is given devisee with power of disposition over the reversion, the devisee is held to take a fee simple title in the estate."

Defendant, however, maintains that, with the principle in mind that the construction of any will must be for the purpose of determining the dominant intent of the testator, the sole question here is: "Does the power in this life tenant to dispose of this property as it becomes necessary

for his support and maintenance convert his life estate into an estate in fee simple?''

Obviously, the parties to this cause hold very different views as to the nature of the authority which was vested in Jarrett under the second paragraph, of the will, as quoted above. One, the plaintiff, contends that the effect thereof is to add to the devisee's life estate, expressly given, the absolute power of disposition of the property. The other, the defendant, replies that there is coupled with the life estate only the power to dispose of the corpus of the property as it becomes necessary for his support and maintenance.

The importance of this divergence of opinion will be apparent when we consider the principles and authorities applicable.

Though counsel for defendant does not expressly concede the point in his brief, we believe from his argument before the court that he substantially admits that the courts of Virginia and of this state have held, since the case of *May* v. *Joynes,* 20 Gratt. 692, that where a life estate is given the devisee, with full power of disposition, the estate vested in such devisee is usually a fee simple. Whatever the rule may be in other jurisdictions, this court and the Supreme Court of Virginia have consistently held to the view that as the dominant intention of the testator in such cases is that the devisee shall not only have the enjoyment of the estate for his life, but shall also have the full power of disposal of the property in any way he may choose, he therefore enjoys all the rights of fee simple ownership, and must be decreed to be vested with the fee simple title. Many decisions support this view, among them: *Bowen* v. *Bowen,* 87 Va. 438, 12 S. E. 885, 24 A. S. R. 664; *Hall* v. *Palmer,* 87 Va. 354, 12 S. E. 618, 11 L. R. A. 610, 24 A .S. R. 653; *Brown's Guardian* v. *Strother's Adm'r.,* 102 Va. 145, 47 S. E. 236; *Cole* v. *Cole,* 79 Va. 251; *Missionary Society* v. *Calvert,* 32 Gratt. (Va.) 357; *Burwell's Ex'rs.* v. *Anderson, Admr.,* 3 Leigh (Va.) 348; *Farish* v. *Wayman,* 91 Va. 430; 21 S. E. 810; *Milhollen* v. *Rice,* 13 W. Va. 519; *Englerth* v. *Kellar,* 50 W. Va. 259, 40 S. E. 465; *Morgan* v. *Morgan,* 60 W. Va. 327, 55 S. E. 389; 9 Ann. Cas. 943; *Blake* v. *Blake,* 92 W. Va. 663, 115 S. E. 794. A few of the cases above cited involved the construction of deeds

rather than wills, but as the problem in each case was the determination of the intent of the maker of the instrument, as disclosed by the writing, the principle is the same in either case.

Admitting, however, that the holdings of this court and of the Virginia court have been to decree as fee simple estates those devises and grants in which it is clear that there is coupled with the life estate the power of absolute disposition, there have been many difficult cases before both tribunals in which it has not been easy to say whether the power granted was of the kind to be accurately termed as a right of absolute disposition. In cases where this troublesome question has arisen, the two courts have not always held to the same view. There are features of the present case which illustrate this difficulty.

We are called upon to answer the question, what is the effect of the expression: "If it becomes necessary for his benefit, use and comfort to dispose of same during his natural life then he may do so and at his death the portion remaining, if any, shall be divided as aforesaid"? What effect do these words have on the life estate expressly devised in the preceding paragraph?

As already stated, the object is always to determine, if possible, just what the testator intended. As remarked in *Morgan* v. *Morgan, supra,* "If the primary or dominant intent be to create a life estate, then such intent will prevail over words indicating an absolute and unlimited power of disposition; and *vice versa,* if the absolute and unlimited power of disposition appears to be the primary or dominant intent of the instrument, then a fee simple estate will be created."

Of course, there is no case either in the reports of this state or of Virginia in which language precisely like that in the present case has been considered. There have been several, however, which contain expressions corresponding in part to that employed here. For example, there have been a number of cases in both jurisdictions which involved words similar to "and at his death the portion remaining, if any, shall be divided", etc. Among the more important Vir-

ginia cases in which language of this character has been reviewed are: *Cole* v. *Cole, supra,* ("half of the . . . . property that may be on hands"); *Hall* v. *Palmer, supra,* ("the balance if any") *Farish* v. *Wayman, supra,* ("or what may remain of the same"). These cases have been carefully selected from a great number of decisions of very similiar character. They are different from the rest in that in them the only words upon which the right of absolute disposal could be founded are the words which we have quoted in the parentheses. Yet the court in every instance held that the language quoted impliedly vested the right of absolute disposal in the devisee or legatee, and that the life estate expressly created in other parts of each will was elevated to an absolute estate. This court faced the same proposition squarely in the case of *Stout* v. *Clifford,* 70 W. Va. 178, 73 S. E. 316. In that case there was an express devise for life, followed by this expression: "and after my wife is *death* that the property if any is left shall be divided *eucely amoung* the children" etc. After admitting, as we have done in this case, that in this jurisdiction the power of absolute disposal is generally held to elevate a life estate into a fee, Judge Brannon took issue with the Virginia court's application of that rule in the cases from which we have quoted above. He points out that upon the four words "if any is left" rested the contention that the life estate was converted into a fee, and criticising the decisions in *Farish* v. *Wayman, supra; Rolley* v. *Rolley,* 109 Va. 449, 63 S. E. 988, and other Virginia cases, he refused to construe those words as implying the power of absolute disposal. The entire opinion is a very instructive one on the propositions in hand, but we would call attention here only to its underlying theme that where a life estate is expressly given, its conversion into a fee can only be accomplished by the vesting of a clear distinct right of disposal in the life tenant. Judge Brannon found no difficulty in reconciling his conclusion with the decisions in *May* v. *Joynes* and *Milhollen* v. *Rice,* as in them the power to dispose was founded on language of much more certain character. Plaintiff in arguing this phase of the case relies strongly on our recent decision of *Blake* v. *Blake,* 92 W. Va. 663, 115 S. E. 794, 29 W. Va. Law Quarterly, 212. There a life estate was

expressly given, coupled with the following words: "And at her demise after paying all her just debts and funeral expenses the *resadue* if any be left to be equally divided among my four children." We held that the estate granted there was absolute, but the distinction between that case and the ones attacked by Judge BRANNON is most obvious. This is shown by the following quotation from the opinion:

> "Under the will, after her death, what part is to be divided among the four children? The residue, that part which is left after her debts and funeral expenses are paid. By whom are these debts to be contracted? Not by the administrator. He is not made her agent to contract debts for her. The will says 'her debts'. And then there are the words 'if any be left'; what do they mean? We think the testator clearly had in mind that there might not be any residue, that she might use all the money, credits and bonds, during her life, so that there would be nothing left to be divided among his children. He placed no limitation on her use, but we think gave her unlimited use of the residue of his money, credits and bonds, after the payment of his own debts and funeral expenses. If she can contract debts which may be charged against or paid out of the moneys, credits and bonds, it appears to us that by strong implication these moneys, credits and bonds are hers absolutely."

Had we been left to decide that case upon the expression "the *resadue* if any be left", and no more, a different conclusion must have been reached under the rule of *Stout* v. *Clifford, supra,* but with the additional words, which impliedly, at least, vested in the legatee the right to contract debts sufficient to consume the entire corpus of the estate, we were bound to decide that her right of disposition was absolute in all respects.

With this opinion in mind, we now come to the very crux of the case before us. What did Mary J. Jarrett mean when she said: "If it becomes necessary for his benefit, use and comfort to dispose of same during his natural life, then he may do so"? When read with the expression "and at his death the portions remaining, if any" etc., do the words indicate or do they not indicate an intent on the part of the tes-

tatrix to vest an absolute power of disposition of the corpus of the property in her devisee, Squire B. Jarrett?

As is, always the case in matters of testamentary construction, we must determine this question from the language of the paper in hand. We have already stated that plaintiff contends that the right devised to Squire B. Jarrett in the language above quoted is the power to absolutely control and dispose of the property as his own. Defendant, however, maintains that what is granted is merely the right to dispose of the property as it becomes necessary for his maintenance and support. Though without authority in the way of cases analogous as to facts, there are fortunately several decisions to which we may and must look for guidance as to the principles applicable. One of the most important of these is the case to which we have already adverted, *Stout* v. *Clifford, supra.* On page 181 of the opinion in that case appears this language:

> "It thus appears that a material, essential element of the rule just stated is that where a life estate is expressly given, to convert it into a fee there must be a clear power of disposition given to the devisee of the life estate. Without at all assailing the rule above stated, we say that the rule does not apply in this case, does not govern this case. Why? Because Clifford's will does not contain such clear, distinct power in Sarah Clifford to sell or dispose of the land. That is the touchstone of this case."

Again, in *Woodbridge, Ex'r* v. *Woodbridge, et als.,* 88 W. Va. 187, 106 S. E. 437, we find this language:

> "It seems to be established that where a life estate is given in a will and a subsequent unequivocal power of disposition is also given, the latter being inconsistent with the life estate will prevail and have the effect of converting the life estate into a fee. Such power of disposal must be, however, clear and unequivocal, as positive as the language creating the life estate, and by disposal is meant not merely the power to sell, but the right to consume or use the proceeds in whatever manner the devisee desires."

And in *Kesterson et al.* v: *Brown et al.,* 94 W. Va. 447, 119

S. E. 677, we find it very tersely stated that ''In determining whether a deed or will passes a fee simple or life estate, the primary or dominant intention from consideration of the whole instrument will govern.''

It is clear from these quotations that the general governing principle is not now in much doubt. We must examine all the language of the testatrix and determine whether the power of disposition is of the requisite positive character. Of course, this does not mean that the language used must expressly say that a fee simple estate is given. If that were the requirement there would be no room for argument or debate, and the question would have been foreclosed long ago. The only issue in each case is whether in substance and effect the words used amount to that.

Jarrett had the right to dispose of this property during his natural life as it became necessary for his benefit, use and comfort. It seems to us at the outset, therefore, that defendant's argument that the enjoyment is limited to support and maintenance is patently fallacious. We can not believe that that which is given to one for his benefit, use and comfort is commonly thought to be or could be intended to be restricted to his maintenance and support. Of course, there are many persons who are so unfortunate in their situations that they can look for benefit, use and comfort only to those things which contribute to their bare subsistence, but happily the most of us have reasonable expectations of more than that. Mr. Jarrett reached the station in life where he was elected sheriff of the county, so we have no doubt he was accustomed to enjoy more advantages than that of mere maintenance. We believe, moreover, that it would be commonly understood that if things were to come into the possession of the average man with the condition attached that they could be disposed of by him for his benefit, use and comfort, he would consider that he held a proprietorship in those things which would entitle him to dispose of them in any way which he might consider would afford him, in his judgment, advantage or satisfaction; in other words, that his right of disposition was unqualified and paramount. However, we should ascertain whether prior judicial construction accords with our understanding.

95 W. Va.

In *Salt Company* v. *Brown,* 7 W. Va. 196, the court referred to Webster's dictionary and found that among the most common meanings of the word "use" are "usefulness, utility, advantage, productive of benefit". And in the case of *In re Ash,* 82 W. Va. 516, 96 S. E. 797, the court held that in a conveyance to a trustee "for the use and benefit" of a church, there was no implication of a "condition, restriction, or negative covenant against alienation, but is merely declaratory of the purposes of the grant." There the trustees of the church sought to sell the church lot, for the purpose, as adjoining landowners believed, of making it possible to drill for oil and gas under the land. Adjoining landowners sought to prevent the sale on the ground that the deed to the trustees "for the use and benefit of said church" was for a specific purpose, to-wit, church purposes. This court, however, in the manner indicated above, held otherwise.

"Benefit" as used in the law of contracts is not limited to pecuniary gain, Page, Contracts, sec. 774, nor do we think to any particular kind of advantage; and "ordinarily when we speak of 'benefits' to us, we mean and refer to what is advantageous to us, whatever promotes our prosperity, or enhances the value of our property, or property rights, or rights as citizens, as contradistinguished from what is injurious." *A. Booth & Co.* v. *Weigand,* 30 Utah, 135, 83 Pac. 734, 10 L. R. A. (N. S.) 693.

"Comfort", of course, is an expression equally comprehensive. As synonyms, for it we find such words as "consolation", "contentment", "ease", "enjoyment", "happiness", "pleasure", and "satisfaction". *Gammert* v. *Rupert,* 127 Fed. 962, 62 C. C. A. 594. Man rarely engages of his own free will in any undertaking in which he is not attempting to realize in some measure one or more of these ends.

It certainly appears to us that the right to dispose of property for one's benefit, use and comfort is as extensive as the right to consume it in the payment of one's debts, which was the case in *Blake* v. *Blake, supra,* and since, as in the Blake case, the expression is coupled with a reversionary clause containing the words "the portions remaining, if any", we are convinced that the power of disposition vested in Jarrett was

intended to be absolute. As contended by counsel for plaintiff, and as stated in *Meyer* v. *Barnett, et al.*, 60 W. Va. 467, 56 S. E. 206, "The fact that he did not exercise that power does not change the quantity of the estate in him." Whether he should dispose of any or all of the estate was for Jarrett alone to decide, *Englerth* v. *Kellar*, 50 W. Va. 259, 268, 40 S. E. 465.

The absolute and unlimited power of disposition being the primary intention as evidenced by the will, we are bound to hold that the title vested in Squire B. Jarrett was a fee simple estate. We so answer the question certified, and our order is to overrule the ruling of the circuit court sustaining the demurrer.

*Ruling reversed.*