**UNITED INS. CO., Inc. v. PENNELL.**

No. 14311.

Court of Civil Appeals of Texas.
Dallas.

Feb. 16, 1951.

Rehearing Denied April 13, 1951.

Freeman, Wolfe, Henderson & Bryant, Sherman, for appellant.

David H. Brown, Sherman, Robert Doss, Denison, for appellee

CRAMER, Justice.

Appellee Pennell filed this action against appellant United Insurance Company to recover monthly disability benefits, plus double indemnity benefits, attorney's fees, costs, etc., under an accident and health policy issued by appellant. It is undisputed that the policy provided for payment at the rate of $100 per month, not to exceed five years, for accidental injury resulting in total loss of time, and double that amount " * * * if 'Such Injury' is sustained by the Insured (1) while driving or riding within any private passenger automobile exclusively of the pleasure car type as an owner or passenger, * * * if the injury causing the loss is due directly to the damaging of such automobile or passenger car."

In answer to special issues the jury found in substance: (1) That on or about October 12, 1948, at that time, place, and occasion alleged, plaintiff sustained bodily injuries; (2) solely from an accident; (3)

which caused his inability to perform each and every duty pertaining to his occupation as a U. S. rural mail carrier; (4) beginning October 12, 1948; (5) which was permanent; (7) that the jeep "was a private passenger automobile exclusively of the pleasure car type"; (8) that a reasonable attorney's fee for the prosecution of the suit is $2,500; (9) that appellee's injuries did not cause him to be only partially disabled; (10) his injuries did not result in whole or in part from the disease of arthritis; and (11) did not result in whole or in part from the disease of arthritis unconnected with any accident. Upon this verdict the trial court entered judgment for appellee for $200 per month from date of the accident to date of the trial, after allowing credit in amount of $1,200 heretofore paid by appellant to appellee, but plus $2,500 attorney's fee and penalty on past due installments.

Appellant took the position throughout the trial that the jeep involved is not a private passenger automobile "exclusively of the pleasure car type."

Appellee contended that the jeep under the conflicting evidence was found by the jury to be a passenger automobile "exclusively of the pleasure car type"; and therefore such jury finding settled the question.

On this appeal appellant's first point asserts that, as a matter of law, the double indemnity provision in its policy did not cover the accidental injury received by appellee in the jeep he was driving at the time in question.

It is undisputed that at the time of the accident and injury, insured was a rural mail carrier and was discharging his duties as such while driving a "jeep" automobile.

The origin, purpose, use, and detailed description of the army jeep is set out in detail by Chief Judge Marvin Jones of the U. S. Court of Claims in Union Pacific R. Co. v. United States, D.C., 91 F.Supp. 762, 765, which opinion is referred to for such information. Such case is only an authority that, for freight rate purposes, the jeep is primarily a passenger vehicle rather than one primarily for freight cargo purposes.

But appellee insists that such case is controlling here.

Each case is controlled by the facts therein involved and the material questions at law as applied to such facts. The Court of Claims, in the Union Pacific case, was considering the primary purpose of the jeep there involved. The army technical manual quoted therein as to the army's purpose in its use of the jeep is as follows: "Purpose: To carry personnel, primarily for reconnaissance; to transport light cargo; to tow 37 mm. anti-tank gun. * * *" The opinion has appended thereto a picture of the War Department model jeep which differs but slightly from the peacetime jeep involved here. The manufacturer's ad introduced in evidence shows many uses for the jeep in farm work,—such as a tractor for pulling plows, harrows, cultivators, for pulling a trench digger, as motor power for a buzz saw, as a fire engine, and trailer; and points out its universal use for many purposes.

In the case relied on by appellee the Court of Claims, in connection with the use of a jeep, held as follows: "The defendant insists that the vehicle is primarily a cargo truck. In a well-prepared and helpful brief it argues strongly the comparatively heavy chassis and many other features. It is persuasive but not quite persuasive enough in the light of the background, purpose, and needs of the army. True, it was used for hauling, but that does not necessarily make it primarily a cargo truck. * * * It is difficult to classify the jeep. It served many purposes. It did much hauling during the war period, both of men and materials. * * * The design called for a speed of 55 miles per hour. It had seats for four passengers. It had no sideboards and very little cargo space. In combat areas it was used a great deal for hauling supplies to the front, but that was frequently by attached trailer, which on arrival would be detached and the jeep used as a passenger vehicle. Outside combat areas it was used largely for passenger transportation. * * *

Surely the jeep was used for hauling. It was in many respects an all-purpose car. The army called it a truck, but that is not very persuasive, since the army called all wheeled vehicles trucks, including passenger cars, except the sedans. It was greatly used for hauling light equipment, especially in the combat areas. But it was used all over France, North Africa and India, the South Pacific and everywhere the army went, both in combat and noncombat areas, by all soldiers from the private to the top general, as a passenger car. It was not a streamlined luxury creation, but it was especially useful in rough terrain where the sedans, motorcycles, and other passenger cars could not go. "We find that the wartime jeep was primarily a passenger car."

Under the record here, the jeep was used by appellee both for the carrying of the mail on his mail route and for all purposes as a family car at home by himself, his wife and his family, such as going to and from church, general transportation of his family and all general household transportation purposes; and in our opinion cannot as a matter of law be classified as a private passenger automobile "exclusively of the pleasure car type" or "exclusively of the truck type," or "exclusively of the freight-carrying type." We are of the opinion, as held by the Court of Claims in the Union Pacific case, supra, that the jeep is an all-purpose car. Like the mule, it is a hybrid; it is neither exclusively a pleasure car type automobile nor exclusively a freight-carrying type, but a combination of all.

In this case the Insurance Company, as held in Dirst v. Aetna Life Ins. Co., 232 Iowa 910, 5 N.W.2d 185, 189, was entitled to define the limits of its liability. Such case holds as follows: "In following the foregoing pronouncement, this court in effect held that the term 'passenger elevator' would not be interpreted as meaning 'passenger type elevator' because, if the insurance company intended such a limitation upon the term, it would have been very easy to express the exact meaning desired. The thing that distinguishes that case from the one now before us is that here the insurance company did the very thing that the Royal Union failed to do there. Here it definitely provided that, not only must the injury be received while operating a 'passenger automobile', but also it must be 'of the pleasure car type'. Clearly the Boles case does not decide the question which now confronts us.

"The case of Lloyd v. Columbus Mut. Ins. Co., supra, [200 N.C. 722, 158 S.E. 386] is the only case cited to us, or which we have been able to find, where the insurance company took the precaution to limit its insuring clause to a pleasure car type of automobile. Accordingly, it is the only case directly in point. We are in accord with the holding there made. Here the parties have made their contract. We must see that it is enforced as made. The insurance coverage was limited definitely, specifically to injuries involving a passenger automobile 'of the pleasure car type'. The automobile involved herein is not of that type. The evidence is clear and undisputed. The court should have so held as a matter of law." See, also, Spence v. Washington National Ins. Co., 320 Ill.App. 149, 50 N.E.2d 128; U. S. Fidelity & Guarantee Co. v. Baldwin Motor Co., Tex.Com. App., 34 S.W.2d 815, Syl. 4, and cases there cited.

We therefore sustain appellant's first point, which point is decisive of the case, and hold as a matter of law that the jeep involved here is not a private passenger automobile "exclusively of the pleasure car type" and therefore not within the coverage of the double indemnity provision of the policy. Such holding makes unnecessary a discussion of the other questions raised in the briefs. The judgment below is therefore reversed and judgment is here rendered that appellee take nothing by this suit on the double indemnity provision of the policy. Since there was nothing due and unpaid on the other provisions of the policy at the time this suit was filed, our holding does not affect the rights of appellee as against appellant on such policy for sums due under other provisions of the policy, and this judgment is therefore without prejudice to sums as have or will become due since the filing of this suit,.

other than on the double indemnity clause involved here.

Reversed and rendered.

BOND, Chief Justice, dissenting.

The majority concludes that a "jeep automobile" is not a "private passenger automobile exclusively of the pleasure car type," as to permit evidence of its classification to come within the limitation of liability perforce of the insured's policy in suit.

The term "pleasure car type" is an undefined classification of an automobile within the terms of the policy. The term "private passenger automobile" is another classification, distinguishable from private automobiles, busses, tractors, and other vehicles for hire. The "jeep" in question is a private passenger automobile, owned and operated by the insured at the time of his injury; designed exclusively for transportation of passengers. It was a "pleasure car type" to the insured and his family. It was not a motorcycle, truck, trailer, scooter-car, sport convertible, racer, luxury limousine, bus, or car for transportation of freight, or for farming instrumentalities.

In Union Pacific R. Co. v. United States, D.C., 91 F.Supp. 762, 765, the Court of Claims gave a history of the "wartime jeep," developed in the automobile construction industry to furnish easy, convenient, and comfortable passenger transportation, with load of at least four persons, two in front seat, two in rear seat. The case turned on whether or not the classification of the "jeep" was a passenger vehicle. Chief Justice Jones of that court said: "Surely the jeep was *used* for hauling. It was in many respects an all-purpose car. The army called it a truck, but that is not very persuasive, since the army called all wheeled vehicles trucks, including passenger cars, except the sedans. It was greatly *used* for hauling light equipment, especially in the combat areas. But it was *used* all over France, North Africa and India, the South Pacific and everywhere the army went, both in combat and noncombat areas, by all soldiers from the private to the top general, as a *passenger car*. It was not a streamlined luxury creation, but it was especially useful in rough terrain where the sedans, motorcycles, and other passenger cars could not go.

"We find that the wartime jeep was primarily a passenger car." (Emphasis supplied.)

The car in question is a post-war product, model 1946, similar in design to the "wartime jeep." True enough, a jeep automobile, like unto all other passenger automobiles (including streamlined luxury creations), is susceptible to be converted into a truck, or for other commercial purposes, and used as a farm implement by the use of necessary attachments and equipment; and where so converted, it may then no longer be classified as "exclusively of the pleasure car type." The mere fact that the jeep can, or may be used for other purposes than passengers, does not change its design as a pleasure type car. The incidental conversion, or use, is not a factor in determining its classification. A pleasure type automobile, as a pleasure carriage, "is one for the more easy, convenient, and comfortable transportation of persons." Middlesex Turnpike Co. v. Wentworth, 9 Conn. 371. " * * * not used for farming purposes or for carrying goods." Moss v. Moore, 18 Johns., N.Y., 128; " 'Pleasure' is synonymous with comfort, consolation, contentment, ease, enjoyment, happiness and satisfaction. National Surety Co. v. Jarrett, 95 W.Va. 420, 121 S.E. 291, 295, 36 A.L.R. 1171." 32 Words and Phrases, pp. 669, 670. The word "type" implies the idea of classification. These elements of "pleasure" necessarily enter into the mode and classification of all passenger automobiles. Some automobiles are more comfortable and ride with more ease, convenience, and satisfaction than others. Illustration: A Model T Ford of long ago certainly would not be considered as comfortable as a streamlined luxury automobile of today; and, perhaps the streamlined automobile of today is not as comfortable as a luxury limousine or automobile of tomorrow; or a "Ford" as a Buick; or a Buick as a Cadillac; etc. It could hardly be said that the clause in the insurance policy here,—"private pas-

senger automobile exclusively of the pleasure car type"—includes only automobiles designed and created for "sensuous gratification * * *; amusement; sport; * * * frivolous or dissipating enjoyment; * * *." Webster's New International Dictionary. The term has no such meaning in insurance policies. The classification implies a passenger automobile as distinguished from trucks, motorcycles, tractors, and other commercial motor vehicles exclusively designed for the transportation of passengers. The word "exclusively" as applied to classification of automobiles in insurance policy, does not mean temporary or *incidental use*, but habitual use of the automobile. Occasional use of a passenger automobile by the owner for commercial delivery does not change its "type," or classification. Fireman's Ins. Co. of Newark v. Rye, 160 Ark. 212, 254 S.W. 465, 15–A Words and Phrases, p. 179.

In Hoover v. National Casualty Co., 236 Mo.App. 1093, 162 S.W.2d 363, 365, the policy involved had a limitation clause indemnifying against loss of life of the insured while a passenger riding in a "pleasure type automobile", with exclusion of certain named instrumentalities. The insured was accidentally killed as a passenger by the wrecking of an automobile then owned and operated by the company for transportation of passengers. The automobile was designed and formerly used by the Greyhound Bus Lines in their business of transporting passengers. The clause and exclusions were: " 'By the wrecking of a private pleasure type automobile or horse-drawn vehicle within which the insured is driving or riding as a passenger (excluding motorcycles and farm machinery), or while so driving or riding by being accidentally thrown from within such wrecked automobile or vehicle.' "

The case turned on the question of the unspecified accident-death provision, and particularly on the term "pleasure type automobile." The Court said: "There are many different kinds of automobiles in operation which are, apparently designed and used exclusively for pleasure; and there are also automobiles used both for pleasure and for commercial purposes. The fact that defendant saw fit to exclude at least two kinds of motor vehicles from its 'pleasure type' coverage, towit: motorcycles and farm machinery, the latter including horse-drawn vehicles as well as tractors and other like automotive machines, indicates that defendant recognized the fact that the generic term 'pleasure type automobile' might be considered as including the machines so specifically mentioned and excluded by its limiting clause.

"The construction of insurance policies is governed by certain general rules which are applied, in addition to the general rules usually applied to the construction of ordinary contracts.

" 'Some of these general rules may be stated thus: The policy should be construed in favor of the insured so as not to defeat a claim of indemnity, which he intended to secure, and which the insurer intended that he should have by virtue of its policy in case of injury or death, coming within the limits of its language. Spring Garden Ins. Co. v. Imperial Tobacco Co., 132 Ky. 7, 116 S.W. 234, 20 L.R.A.,N.S., 277, 136 Am.St.Rep. 164; Benefit Ass'n of Ry. Employees v. Secrest, 239 Ky. 400, 39 S.W.2d 682. Its language is to be construed so as to effectuate the insurance and not so as to defeat it. North River Insurance Co. v. Dyche, 163 Ky. 271, 173 S.W. 784. It should be given a practical and rational construction, one consistent with reason and common fairness rather than one that tends to defeat it, if the terms of the instrument will fairly and justly permit it. Benefit Ass'n of Ry. Employees v. Secrest, supra [239 Ky. 400, 39 S.W.2d 682]. Phrases or words of ambiguous, doubtful, or equivocal meaning, appearing in the policy, are to be construed in the insured's favor. General Accident, Fire & Life Assur. Corp. v. Louisville Home Telephone Co., 175 Ky. 96, 193 S.W. 1031, L.R.A.1917D, 952. If practical, such construction thereof should be given it as to cover the subject-matter. Firemen's Ins. Co. v. Yarbrough, 234 Ky. 525, 28 S.W.2d 771. Another one of universal application is that: "A contract of insur-

ance will be construed strictly against the insurer and liberally in favor of the insured." Actna Ins. Co. v. Jackson, Owsley & Co., 16 B.Mon. (Ky.) 242. They are fundamentally based upon the fact that the language therein was carefully and intentionally chosen, and used in the policy by the insurer, in the absence of the insured, with the intent and for the exclusive purpose of protecting itself against claims arising in the future by reason of its contract of insurance, and that the insured had no opportunity of examining it before it was delivered to him.' Life & Casualty Ins. Co. of Tennessee v. Metcalf, 240 Ky. 628, 42 S.W.2d 909, loc. cit. 910. * * *

"Insured could have believed that the coverage included all automobiles not specifically excluded, on the theory that defendant had defined the meaning of the term 'pleasure type automobile' by excluding therefrom all automobiles not included in the expression. Parties to a contract may define the meaning of terms used therein and such meaning as so defined will ordinarily be enforced by the courts. Standard Oil Co. v. Powell Paving & Contracting Co., 139 S.C. 411, 138 S.E. 184, loc. cit. 193; 13 C.J. 532; 17 C.J.S., Contracts, § 300."

In commenting on the decision (Hoover-National Casualty, supra), 6 Blashfield, sec. 4122, says: "Implied coverage limitation to 'private pleasure type automobile' accidents may be nullified by subsequent express limitation. So, in policy covering death by wrecking of a 'private pleasure type automobile * * * excluding motorcycles and farm machinery,' while the term 'pleasure type automobile' impliedly excludes other vehicles under the rule of 'expressio unius,' the addition of the later express excluding clause created an ambiguity requiring construction against insurer * * *." So, in the instant case the clause limiting liability for death or injury "while driving or riding within any private passenger automobile exclusively of the pleasure car type as an owner or passenger," is so shrouded in uncertainty, vagueness and ambiguity that all reasonable intendment should be construed favorable to the insured. Such limitation,

"exclusively of the pleasure car type," would have application in most streamlined luxury automobile creations, if, perchance, occasionally and incidentally they be used for transportation of anything other than passengers. See 45 C.J.S., Insurance, § 770, p. 796; Poncino v. Sierra Nevada Life & Cas. Co., 104 Cal.App. 671, 286 P. 729.

The record evidence here shows that the appellee at the time of his injury was a rural mail carrier; that he used the automobile for all family purposes and as a means of transporting the mail; it was his private automobile; he detailed in evidence the mechanism of the automobile,— it being equipped with 4-wheel traction power, casings for rough terrain over which he had to travel; it has 4-wheel drive when needed, cloth top, two seats (front and rear), springs, and all equipment and attachments as usually employed by 4-wheel passenger automobiles; that it had no attachment or apartment for freight, and if any freight was to be transported, necessarily it had to be put in the back seat designed for passengers. A Mr. Williams testified that after the occurrence in question he purchased the involved jeep automobile from Mr. Pennell and used it for carrying the mail over a 50-mile rough road; that he purchased it to replace a 1936 two-door Ford sedan which he had theretofore been using for such purpose. A Mr. Brown, Chief Deputy for the Highway Department of Grayson County, testified that since January 1, 1947 he has been custodian of records of registration in said county and, in 1947 and 1948, Mr. Pennell registered a "Willys Jeep, 1946 Model, classification as Passenger car." A Mr. Tuffer, General Manager of a motor company handling Hudsons, Packards, Willys jeeps and Reo trucks, testified as an expert witness for defendant. He stated that the only difference between a Willys Jeep and the other pleasure cars is that the jeep has 4-wheel drive, the other cars only 2-wheel drive; that the jeep make-up or appearance is different and some difference in the construction of springs. He further testified that he sells many jeeps to mail carriers.

for carrying the mail, due to the fact that jeeps get around in the mud and over rough roads better than other automobiles; that he also sells some to farmers for the same reason. On cross-examination, Mr. Tuffer testified:

"Q. Passenger cars—there has been something said about a pleasure type of passenger car. Is that correct? A. Yes, sir.

"Q. Is a jeep a passenger car, Mr. Tuffer? A. It is bound to be a passenger car. It hauls passengers * * *

"Q. Are there any passenger cars that are not pleasure type? A. Yes, there are.

"Q. Will you enumerate what kind of passenger cars there are that are not pleasure cars? A. Busses and trucks are not pleasure cars.

"Q. In other words, a truck is not a pleasure type passenger car? A. That's right, but its a passenger car.

"Q. Would you name some pleasure type passenger cars, exclusively of the pleasure car type? A. You know I sell Packards, and I think they are plenty good.

"Q. Let's advertise a little. A. Advertise Hudsons and Packards. They are passenger cars. They are built for that. For pleasure cars.

"Q. Are there differences in the Packards and the Hudsons? Is there a difference in the make-up and structure? A. Yes, sir.

"Q. Is there a difference in the horsepower? A. Yes, sir.

"Q. Is there a difference in the spring construction? A. Yes, sir.

"Q. Is there a difference in the seat construction? A. Yes, sir.

"Q. All right, sir. How about some other types of automobiles? A. There is a slight difference in all of them.

"Q. And we have many, many types of cars, exclusively of the pleasure type, don't we? A. Right. * * *

"Q. You said the difference between the jeep and other pleasure type cars is that it had 4-wheel drive. What is the purpose of the 4-wheel drive? A. More power." A Mr. Shiflett, geophysicist with State Exploration Company, testified as an automobile expert for the defendant and gave evidence as to the difference between constructional features of a "jeep" automobile and other passenger automobiles, and in effect gave his opinion that the jeep was not an exclusive pleasure type car. On cross-examination Mr. Shiflett testified:

"Q. I want to ask you one or two questions. Do you own a jeep for your own personal use? A. Yes, sir.

"Q. What do you use it for? A. Primarily to hunt and fish.

"Q. Do you get any pleasure out of driving it and using it? A. Sure.

"Q. Do you have any friends who own jeeps for their own personal use? A. Yes, sir.

"Q. What do they use them for? A. Some of them use them to hunt, and some fish.

"Q. For pleasure? A. That's right."

On the record evidence thus presented as to whether or not the jeep automobile was "any private passenger automobile exclusively of the pleasure car type," the trial court submitted a pertinent issue, and the jury answered that the automobile in question was, in fact, a "private passenger automobile exclusively of the pleasure car type;" and the trial court entered judgment accordingly.

In our original opinion, we gave a too technical and restricted meaning to the clause in the policy, evidently not cognizably considered, or given credence by the insurer. On being advised of the insured's injury, the insurer periodically made double indemnity payments on the faith of the clause in question. The insurance company had every opportunity to know the facts incident to appellee's injury and the "type" of car in which he was riding at the time of his injury. The policy provides that "Notice must be given the Company in the event of accidental death or disability from accident or illness as required by the policy," and "Affirmative proof of loss must be furnished to the Company at its said office in case of claim of loss from disability * * *." Hence

it might well be assumed, in absence of proof to the contrary, that in making the payments of double indemnity, the insured complied with the terms of the policy, gave notice and proof, and a detailed account of how the injury occurred. At any rate, the Company had the right of ascertaining the facts. It is unreasonable to say that the insurance company paid for double indemnity, not knowing that the insured was injured while riding in a "jeep" automobile.

It is the writer's opinion that appellee's motion for rehearing should be sustained, our former judgment set aside, and the judgment of the trial court affirmed.

I respectfully dissent from the majority on rehearing.