McBRIDE, Judge.
On July 2, 1962, the Collector of Revenue ■of the State of Louisiana under LSA-R.S. 47:1564 assessed Canal Barge Company Inc., a Louisiana corporation domiciled and ■doing business in New Orleans, for a tax of ,$6,151.90, plus interest, based on the rental paid for certain barges which was levied pursuant to LSA-R.S. 47:302; on June 23, 1958, the Collector levied a similar assessment amounting to $6,368.55, with interest, against Central Marine Service, Inc., .also a Louisiana corporation domiciled and ■doing business in New Orleans. Said assessments were confirmed by the Board of Tax Appeals, State of Louisiana.
By separate proceedings, each of said ■corporations appealed from the assessment ■levied against it to the Civil District Court for the Parish of Orleans pursuant to LSA-R.S. 47:1565. The two matters were consolidated for hearing in the lower court as ■well as for argument before us.
In due course the court below affirmed •the assessments and by separate judgments ■cast the tax debtors for the amount assessed against each; by separate appeals ■they have brought up the matters to this ■court. This opinion will adjudicate both appeals.
Central Marine Service, Inc., pursues the business of renting barges to its customers; during the period for which the Collector levied the tax the corporation chartered or leased from the owner thereof certain deck barges. No tax on such leasing was paid .the State of Louisiana. The corporation in turn subleased these deck barges to its •customers, collected rentals from them, and paid in full to the Department of Revenue the tax on the amount of rentals under -such subleases. Thus, the State has collected all taxes based on the rentals which the sublessees of the barges paid. It is the tax on the rentals under the leases of the barges by said appellant from the owner which the Department of Revenue is seeking to collect and which is in dispute.
Canal Barge Company, Inc., is engaged in a similar line of business; it leased certain of its own barges to its customers and no tax was paid to the State of Louisiana on the transactions; said corporation also leased from the owner thereof certain barges which it in turn subleased to its customers and no taxes were paid the State. The amount of tax assessed as being due on all of said leasing and subleasing transactions is in dispute.
The taxes claimed from each of the appellants are for the rental of the barges insofar as they were utilized solely within the boundaries of the State of Louisiana on the Mississippi River and the waterways leading thereinto and/or into the Gulf of Mexico. During the taxable periods both appellants were deemed exempt from any taxes on the rentals of such barges accruing while they were being operated in foreign or interstate commerce (see LSA-R.S. 47:305, 6th paragraph).
The tax under which the assessments are made is established by LSA-R.S. 47:302 of the Sales Tax Statute which provides in part as follows:
“B. There is hereby levied a tax upon the lease or rental within this state of each item or article of tangible personal property, as defined herein; the levy of said tax to be as follows:
“(1) At the rate of two per centum (2%) of the gross proceeds derived from the lease or rental of tangible personal property, as defined herein, where the lease or rental of such property is an established business, or part of an established business, or the same is incidental or germane to the said business.
*83 “(2) At the rate of two per centum (2%) of the monthly lease or rental price paid by lessee or rentee, or contracted or agreed to be paid by lessee or rentee to the owner of the tangible personal property.”
Under its definitions the Sales Tax Act provides in LSA-R.S. 47:301(7) that:
“ 'Lease or rental’ means the leasing or renting of tangible personal property and the possession or use thereof by the lessee or rentee, for a consideration, without transfer of the title of such property.”
Other definitions appear thus:
LSA-R.S. 47:301(16):
“ ‘Tangible personal property’ means and includes personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses. * * * ”
LSA-R.S. 47:301(18):
“ ‘Use’ means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof, * *
Under the Sales Tax Act, the basic liability for the tax is put upon the customer or user, although the “dealer,” as statutorily defined, is responsible for the collection thereof from the customer. LSA-R.S. 47 :- 303, 304.
Appellants contend that a tax on the rental for use of vessels on the waterways of the State of Louisiana constitutes a direct burden on such use which is prohibited by both the Enabling Act of February 20, 1811 (2 Stat. 641 [1811]) and the Act of Admission of Louisiana into the Union of April 8, 1812 (2 Stat. 701 [1812]) which made it a condition that:
“ * * * the river Mississippi, and the navigable rivers and waters leading into the same, and into the gulf of Mexico, shall be common highways, and for ever free *' * * without any tax, duty, impost or toll there-foi* ^ ^ **
Counsel do not pretend the rental tax is directly levied on the passage over or upon the waters of Louisiana, but they argue that when it is imposed on an instrumentality that is so immediately associated and so closely connected with the use of the waterways, it is tantamount to a direct tax on such use in contravention of the Acts of Congress. They say water is usable only by vessels and vessels are only usable on water, the two being inseparable. Appellants lay heavy stress on an article written by Mr. Charles D. Marshall, appearing 35 Tul.L.Rev. p. 199, et seq., in which many cases are cited and in which the author concludes that there is a possibility that notwithstanding the Sales Tax Law, rentals paid for the use of vessels in Louisiana waters might have to be held free of tax, in view of the two above-mentioned Acts of Congress passed in connection with Louisiana’s admission into the Union.
We are also cited to United States v. Hvoslef, 237 U.S. 1, 35 S.Ct. 459, 59 L.Ed. 813 (1915) in which the U. S. Supreme Court struck down a federal stamp tax imposed upon charter parties for the carriage of cargo from state ports to foreign ports .as being a tax on exportations; Brown v. Maryland, 12 Wheat. 419, 25 U.S. 419, 6 L.Ed. 678 (1827) in which it was held that a tax on the occupation of importer was equivalent to a tax on importation; Almy v. People of State of California, 24 How. 169, 16 L.Ed. 644 (1861) in which a state stamp tax on bills of lading for the interstate transportation of gold and silver was held an unconstitutional duty on the articles shipped; Helson v. Commonwealth of Kentucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683 (1929), wherein it was concluded that a tax on gasoline brought into the state and used on an interstate ferry was analogous to a tax on the use of the ferry itself and *84 therefore within the rule prohibiting state taxes on commerce.
The Collector makes the point that the Acts of Congress relied upon by the appellants have no force and effect for the reason that the Federal Constitution in empowering Congress to admit new states into the Union used the following language: “New States may be admitted by the Congress into this Union,” which does not endow Congress with power to impose any conditions for admission such as was done in the case of Louisiana.
In view of the conclusion we have reached, there is no necessity to determine whether said acts of Congress are repugnant to the Constitution of the United States. Such acts provide that the Mississippi River and the waterways leading thereto and to the Gulf of Mexico shall be common highways and free to the inhabitants of the states and territories of the United States without any tax or impost imposed by the state.
None of the authorities mentioned above cited by appellants are apposite to the situation before us. No element of interstate commerce is involved as is to be seen from the stipulations entered into by opposing counsel, nor is there involved any tax on exports or imports. The tax imposed by the Sales Tax Statute on the rental of the barges is not a tax upon the right to use the river or navigable waters and does not interfere in any way or obstruct the full use of such, nor is it a tax on the barges themselves. Neither can it be said that the tax imposed by LSA-R.S. 47:302(B) is a tax on the “use” of tangible personal property. Two elements must combine to produce the taxable incident— the leasing of the property coupled with its possession or use within the boundaries of the state by the lessee whether the property be possessed or used on land or water. If a lessee does not possess or use the leased property within the state, then no tax is due. If there is a possession or use within the state without a leasing or rental, no tax is due. It is the act of leasing or rental in combination with possession or use of the property within the state which is the incidence of the tax involved. The location of the property determines where the act of leasing is taking place and whether a tax is due. If the property is located in Louisiana, the act of leasing is occurring in Louisiana and it is subject to the tax. If the property leased is located without the state, the act of leasing is occurring outside the state and there is no tax. It seems to us that it would be just as logical to say that when a sales tax is imposed on the purchase price of an automobile, that such tax is tantamount to taxation on the use of federal highways as it is to say that the Sales Tax Law as applied to the rentals of the barges levies a tax on the state’s waterways.
The imposition of the tax on the leasing or rental of tangible personal property possessed or used in Louisiana by the lessee is analogous in operation to that imposed on a sale “in this state” of personal property. See LSA-R.S. 47:302(A). In the former case the tax is not on the property itself and the amount of the tax is determined according to the rentals paid by the lessee or rentor, while in the latter case the tax is measured by the sales price of the article. The sales tax is not imposed upon the property itself, but on the act of transferring title to the property. Fontenot v. Searcy & Pfaff, Ltd., La.App., 78 So.2d 204. The tax under scrutiny is not a “use tax”; like the tax on a sale it is a tax upon a transaction, i. e., the leasing and renting of property when the subject matter of the lease is possessed or used by the lessee in this state.
The only analogous jurisprudence we know of is State v. El Rito Transp. Co., Inc., 193 La. 548, 190 So. 803, in which our own Supreme Court held that a franchise tax upon the gross receipts of the intrastate business of a shipping line is not contrary to the Enabling Act admitting Louisiana to statehood, which provides that the Mississippi and navigable rivers leading *85 into it or into the Gulf of Mexico should be common highways free of tax. Said the Court:
“ * * * The license tax imposed by the Act is not upon the right to use the River or navigable waters and does not interfere with, deter, impede, or obstruct the free use of such nor is it a tax on the vessels themselves. The tax is not upon the right to use the navigable waters but upon the right to engage in a business within the State of Louisiana, based on the gross receipts after they have been reduced to possession.”
Appellants, in the alternative, contend the amount of rentals paid the original lessor (the owner) should not be taxed as this would be double taxation. In essence they claim the State has no right to collect the rental tax on both appellants’ leasing of the vessels from the owners and also on the amount of rental which appellants received from their sublessees.
The taxpayers suggest that it is the ultimate user or consumer of the item who bears the burden of the • sales tax. They maintain that this was also intended by LSA-R.S. 47:302(B) (1) and (2), and that only the ultimate possessor or user of the leased or rented property is meant to be amenable to a tax on the rentals. They •continue by saying in their brief:
“ * * * The lessee or rentee does not agree to pay a tax to two successive lessors who may have leased the property until it finally comes into hands of such user. In the administration of the act, it would appear that it was contemplated that the person making the lease with the user would be considered the owner and it is on this payment only that the tax was to be levied. Any other construction does violence to the intention of the act. It would have been a simple matter for the legislature to say lessor rather than owner. But once a tax is collected that should be the end of it. The state is finding in effect an ‘owner where one does not exist when it says successive ‘owners’ owe a tax.”
We do not agree with the contention advanced. It seems to us that LSA-R.S. 47:302(B) (1), which levies a tax “[a]t the rate of two per centum (2%) of the gross proceeds derived from the lease or rental of tangible personal property, as defined herein, where the lease or rental of such property is an established business, or part of an established business, or the same is incidental or germane to the said business,” was intended to apply to such transactions as were confected between the appellants and their sublessees. Both appellants are in the business of renting and leasing barges and such rentals as they made to their sublessees are “an established business” whether or not they owned the barges, and on such transactions the tax on the gross proceeds of the sublease transactions would be exacted under LSA-R.S. 47:302(B) (1).
LSA-R.S. 47:302(B) (2) levies a tax “[a]t the rate of two per centum (2%) of the monthly lease or rental price paid by lessee or rentee, or contracted or agreed to be paid by lessee or rentee to the owner of the tangible personal property,” and we think it is under this paragraph appellants, as lessees, would be liable to the State for a tax on the rentals from the owners of the barges, it not appearing the leases or rentals are “an established business” of the owners or “part of an established business.”
The question now being considered confronted the late First Circuit Court of Appeal in Gulf Coast Rental Tool Service, Inc. v. Collector of Revenue, 98 So.2d 704 (certiorari refused), which concluded that taxes were due on both the amount of the original lease and also on the rentals under a sublease of the same property. Said the court:
“ * * * Thus, unless the statute can be construed as exempting ‘leases *86 for releasing’, there is a sales tax due upon the first transaction as well as upon the second.
******
“ * * * seemingly applicable is the principle of statutory construction expressed by the maxim, ‘Expressio unius est exclusio alterius’ (the specific mention of one exemption implies the exclusion of others). See State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656; McCaffrey, Statutory Construction (1953) 50, Section 17.”
The statutory definition of “lease or rental” appearing in LSA-R.S. 47:301 (7) requires “possession or use” by the “lessee or rentee.” According to LSA-R.S. 47 301(18) “use” means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof. Paradoxically, appellants (as lessors) and their sublessees can be said to have been using the barges at one and the same time. The sublessees were actually “using” them on the waterways of Louisiana. The appellants throughout the period of the subleases were “using” the barges in connection with their business of renting or leasing. The subleasing was an exercise “of any right over tangible personal property.” And what was the purpose of appellants’ use? To derive a profit from their business operations. Such use of the barges in that regard was just as much a “use” as the barges were put to by the sublessees.
One of the definitions of the verb “use” according to Webster’s New International Dictionary, Second Edition, is “to convert to one’s service; to avail oneself of; to employ; * * *.”
The most common meanings of the word “use” are usefulness, utility, advantage, productive of benefit. National Surety Co. v. Jarrett, 95 W.Va. 420, 121 S.E. 291, 295, 36 A.L.R. 1171; Williams v. City of Norman, 85 Okl. 230, 205 P. 144, 148.
. Generally the “use” of a thing does not mean the thing itself but that the user is to enjoy, hold, occupy, or have in some manner the benefit thereof. Galloway v. Sewell, 162 Ark. 627, 258 S.W. 655, 656; Spooner v. Phillips, 62 Conn. 62, 24 A. 524, 525, 16 L.R.A. 461; Elwell v. Stewart, 110 Kan. 218, 203 P. 922.
“Use,” in the charter of a transportation company did not necessarily imply the use by running trains, but was satisfied by the road being used for earning tolls, under a lease to another road. Black v. Delaware & R. Canal Co., 22 N.J.Eq. (7 C.E. Green) 130, 411.
For the above and foregoing reasons, both judgments appealed from are affirmed.
Affirmed.